# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**2542 North Holton Street, Lower Unit,<br>Milwaukee, WI** | )<br>)<br>)<br>)<br>)<br>)    Case No. 13-m-547 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., Sections 841(a)(1) and 846 | Conspiracy to distribute marijuana |

The application is based on these facts:

See attached affidavit of applicant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's Signature*

Marshall S. Hermann, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 11, 2013
      at 11:18 AM

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

William E. Callahan, Jr. United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Marshall S. Hermann, being duly sworn, depose and states as follows:

## I.     TRAINING AND BACKGROUND

1.     I am a Task Force Officer with the Department of Justice, Drug Enforcement Administration and a state certified law enforcement officer currently assigned to the Milwaukee District office. I am federally deputized by the United States Department of Justice, Drug Enforcement Administration ("DEA"). I have worked as a full time law enforcement officer since June 2001. Prior to my assignment with DEA, I have worked full time as a law enforcement officer for more than twelve (12) years with the Ozaukee County Sheriff's Department and currently employed in the rank of Detective. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. Based on my training, experience and participation in drug trafficking investigations and associated financial investigations involving large amounts of cocaine, crack cocaine, marijuana and/or other controlled substances, I know and have observed the following:

   a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States;

   b. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

   c. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

d. I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

e. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

f. I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them;

g. It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time. It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses, offices, or personal residence.

h. It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner. These records have included bank records, automobile titles, property deeds, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

i. Likewise, it is common for businesses who engage in transactions with individuals involved in criminal activity to conceal the nature of the transactions through false records such as invoices, by maintaining false financial records, or placing the transaction in a nominee name. These businesses may need to keep these false records for inventory or bookkeeping reasons. However, these false records may be placed in a separate location such as a personal residence, safe, or safe deposit box for concealment.

j. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer,

count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

l. I know that the Currency Transaction Report (CTR) (Fincen Form 104), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction that exceeds $10,000, causes tremendous problems with drug traffickers when they attempt to negotiate their illegal profits at a financial institution; I further know that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances;

m. I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

n. I am familiar with computers, cellular telephones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering activities to communicate with their associates and financial institutions; That drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices;

o. Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade and/or money laundering activities; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular /

3

wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data.

2. Throughout this affidavit, I rely on the records of the Wisconsin Department of Transportation (WDOT), since they are official records, kept in the ordinary course of business, which are updated on a regular basis. I also rely on the records of Wisconsin Energies (WE) since they are business records maintained for billing purposes, kept in the ordinary course of business, and are also updated on a regular basis.

3. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, informants, and defendants, whose reliability is established separately herein.

4. The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures. However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrants.

5.     I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

## II.     LOCATIONS TO BE SEARCHED

6.     This affidavit is submitted in support of applications for search warrants to seek evidence of conspiracy to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and knowingly and intentionally concealing drug proceeds, in violation of Title 18, United States Code, Section 1956(a), for the below-listed locations associated with suspects who have committed, are committing, and will continue to commit the above-listed offenses.

- **110 East Belle Avenue, Whitefish Bay, WI** – Primary residence of Edward Patterson. A check of WE Energies reveals that there has been an open account at this address in the name of Edward Patterson with phone numbers of (414) 331-6528 and (414) 659-7771 since July 2007. McDonald's is listed as the employer on the account, and the July 2013 bill was paid for with a McDonald's corporate check listing the address of **11250 N. Port Washington Road, Mequon, WI (Mequon McDonald's Restaurant)** The house is described as a two story single family residence, brown brick, with lannon stone accents.   There is a brown asphalt roof with tan trim.  The glass front door faces south, and has white trim.   The residence has a two car detached brown brick garage with lannon stone trim, and a white overhead garage door.  There is a brown wood fence that encloses the area between the residence and the garage.   The numbers to the residence are not visible on the residence due to overgrowth of the landscaping.  The residence is located on the northeast corner of East Belle Avenue and North Bay Ridge Avenue.

- **740 A North Mill Street, Upper Unit, Saukville, WI** – Primary residence of Ken Lubecki and Penny Seidl. A check of WE Energies reveals that there has been an open account at this address in the name of Kenneth J. Lubecki with the phone numbers of (262) 305-3045 since July 2010.  The residence is a two story tan brick duplex, with red trim and a red asphalt roof.  740A is the upper unit.  The front entrance door is on the west side of the building, and is white in color.  The numbers "740" are affixed to a large landscaping rock on the west end of the driveway.  There is a detached three car garage on the south side on the back of the residence.

- **133 C North Mill Street, Saukville, WI** – Primary residence of Dan Meyer and Sandra Heiniger, Paul Heiniger's sister. A check of WE Energies reveals that there

has been an open account at this address in the name of Sandra Heiniger with a phone number of (262) 355-5580 since August 30, 2013. Based on the investigation to date, Dan Meyer and Sandra Heiniger recently moved from **133 A N. Mill Street, Saukville, WI to 133 C N. Mill Street, Saukville, WI.** WE Energies records confirm that Sandra Heiniger had a WE Energies account at **133 A N. Mill Street, Saukville, WI** from December 2007 until August 20, 2013. The residence is described as a two story three family unit, with white brick with red trim, and a black asphalt roof. The front door to Unit 133 C is on the east side of the building. The numbers "133C" are affixed to the trim above the front door, which is white in color.

- **2542 North Holton Street, Lower Unit, Milwaukee, WI** - Primary residence of Bernardo Espinosa-Zamudio and Xochitl Morales-Zamudio. A check of WE Energies reveals that there has been an open account at this address in the name of Bernardo Espinosa-Zamudio. The duplex is described as a two story residence with brown siding, white window trim, black asphalt roof, and the numbers "2542" affixed to the right of the front door, which faces west. The residence has a two car attached garage with gray siding and dark asphalt roof. The numbers "2542" are affixed to the south side of the attached garage, which faces the alley. A check of City of Milwaukee Assessor records reveals that the property is owned by Xochitl Morales-Zamudio.

- **6752 South 17th Street, Milwaukee, WI** – Primary residence of John and Tammy Webler. A check of WE Energies reveals that there has been an open account at this address in the name of John Webler with a phone number of (414) 856-9590 since December 2002. Webler listed his employer on the account as McDonalds. The house is described as a one story single family residence with tan colored siding and a brick front, white window trim with maroon shutters on the front, a red asphalt roof, a cream colored storm door on the front door and the numbers "6752" affixed to the right of the front door, which faces the west. There is a driveway on the south side of the residence, leading to a two car detached garage with a dark colored asphalt roof. A check of City of Milwaukee Assessor records reveals that the property is owned by Tammy and John Webler.

- **1675 A Coachlight Drive, New Berlin, WI** – Apartment of Andrea Marquardt. A check of WE Energies reveals that there has been an open account at this address in the name of Robert Marquardt with a phone number of (262) 366-7820 since August 2007. The apartment building is described as a two story multi-unit apartment complex cream colored siding and brick exterior, brown asphalt roof, a cream and brown colored storm door on the front door with the numbers "1675" affixed above the door, which faces east. Immediately inside of the front door, there are mailboxes, and noted on Unit A is the name "Marquardt." There are stairs leading up to the individual apartments.

- **N16 W26587 Bluegrass Lane, Unit F, Pewaukee, WI** – Condominium of Andrea Marquardt. A check of WE Energies reveals that there has been an open account at this address in the name of Robert Marquardt with a phone number of (262) 827-9126

since March 2007. The residence is described as a two story multi-unit condominium complex with gray siding and red brick, white window trim, and black asphalt roof, The front door to the residence faces east, is green in color, and has the letter "F" affixed to the door in white lettering. The numbers "N16 W26587" are affixed to the attached two car garage on a piece of wood, and face west. There is another small "F" denoted under the wooden address plaque.

- **W124 N13025 Wasaukee Road, Germantown, WI** – Primary residence of Paul Markiewicz. A check of WE Energies reveals that there has been an open account at this address in the name of Edgar Schoessow with a phone number of (262) 242-4149 since February 1967. Per statements of Paul Markiewicz to case agents, Markiewicz had been renting the residence, and after Schoessow died Markiewicz purchased the residence. Per the Washington County Tax Assessor's public website, Paul Markiewicz is the loan subject who pays taxes at that residence and is listed as the landowner. The house is described as a two story residence with white siding and trim. There is a front porch on the east side of the residence. The front door is located on the front porch, with the numbers "W124 N13025" affixed on the siding to the right of the front door. The residence has a gray asphalt roof, a gravel driveway, and contains numerous outbuildings.

- **5649 North River Forest Drive, Glendale, WI** – Residence where Kevin Breitzman is residing. A check of WE Energies reveals that there has been an open account at this address in the name of Nema Gamble with a phone number of (262) 210-8770 since March 2013. The house is described as a two story single family residence with white siding on the upper half, and red brick on the lower half, white window trim, red asphalt roof, the front door is a white storm door, with numbers "5649" affixed to the brick on the left side of the front door. The residence has a one car attached garage on the north side of the residence.

- **11250 North Port Washington Road, Mequon, WI (Mequon McDonald's)** - Described as an operating McDonald's restaurant. There is a large McDonald's sign to the west of the restaurant, with McDonald's corporate logos on the windows. The building is described as light gray siding, with light green trim. The doors to the business are located on the south side, and the north side of the restaurant. There is a drive through lane to the east of the restaurant leading to the drive through windows on the north side of the restaurant.

- **5344 North Port Washington Road, Glendale, WI (Glendale McDonald's)** - Described as an operating McDonald's restaurant. There is a large McDonald's sign to the west of the restaurant, with McDonald's corporate logos on the windows, awnings, and brick. The building is described as cream colored and red brick restaurant, with red awnings. The doors to the business are located on the west side, and the south side of the restaurant. There is a drive through lane to the east of the restaurant leading to the drive through windows on the north side of the restaurant.

- **8739 North Port Washington Road, Fox Point, WI (Fox Point McDonald's)** -

Described as an operating McDonald's restaurant. There is a large McDonald's sign to the west of the restaurant, with McDonald's corporate logos on the windows, awnings, and brick. The building is described as tan wood siding, with brown trim. The whole east side of the restaurant is glass windows. There is a McDonald's sign on the roof of the east side of the restaurant. The doors to the business are located on the east side, and the north side of the restaurant. There is a drive through lane to the west of the restaurant, leading to the drive through windows on the south side of the restaurant.

- **4390 North Richards Street, Unit #E43, Milwaukee, WI** – U-Haul Storage Shed rented by Edward Patterson. Current rental records as of October 2, 2013 from U-Haul Corporate show that Edward Patterson is the customer, and has paid for this storage unit through October 26, 2013. The storage unit is described as brick and metal cream colored storage sheds, with blue storage shed doors. The storage shed unit number "E43" is affixed above the storage shed in black writing. Storage Unit #E43 faces east.

- **4390 North Richards Street, Unit #E38, Milwaukee, WI** – U-Haul Storage Shed rented by Kevin Breitzman. Current rental records as of October 2, 2013 from U-Haul Corporate show that Kevin Breitzman is the customer, and has paid for this storage unit through October 29, 2013. The storage unit is described as brick and metal cream colored storage sheds, with blue storage shed doors. The storage shed unit number "E38" is affixed above the storage shed in black writing. Storage Unit #E38 faces south.

- **4831 North Oakland Avenue, (Upper unit), Whitefish Bay, WI** – Primary residence of Bruce Hutson. A check of WE Energies reveals that there has been an open account at this address in the name of Bruce Hutson with a phone number of (414) 406-1562 since October, 2012. The house is described as a two story duplex, with brown brick exterior with lannon stone accents, cream window trim, brown asphalt roof. The arched front door faces east, and is on the south end of the residence, with a tan storm door. The numbers "4831" is affixed to the brick to the left of the front door. The residence has a three car detached garage with brown brick and lannon stone trim, and a brown asphalt roof.

7.    On October 8, 2013, a federal grand jury in this district returned a thirteen-count indictment charging six defendants with various drug-trafficking offenses, including knowingly and intentionally conspiring to distribute 100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(B), and Title 18, United States Code, Section 2, and money laundering, in violation of Title 18, United States Code, Section 1956(a). *See United States v.*

*Edward Patterson, et. al*, Case No. 13-Cr-193 (E.D. Wis.). The indictment also contains a probable cause finding that the McDonald's restaurants located at **11250 N. Port Washington Road**, Mequon, WI, **8739 N. Port Washington Road**, Fox Point, WI and **5344 N. Port Washington Road,** Glendale, WI (all of which are McDonalds franchises owned by Edward Patterson) were used to facilitate the drug trafficking offenses and were involved in the money laundering offenses. *See* Attachment C.

## III.   PROBABLE CAUSE

8.    The following sub-sections set forth various types of information obtained during this investigation regarding the locations and persons described above. Such information includes, but is not limited to: (1) information obtained from confidential sources; (2) surveillance; (3) recorded conversations; and (4) physical seizures.

### Information provided by confidential sources, surveillance, and physical seizures.

9.    This investigation was initiated in September 2012. To date, case agents have determined that a group of individuals, both known and unknown, are involved in a drug trafficking organization that case agents refer to as the "Patterson Drug Trafficking Organization" (DTO). This DTO cultivates, transports, and distributes marijuana and other controlled substances in and around the areas of Milwaukee, Wisconsin, Mendocino County, California, and elsewhere.

### Information Provided by Confidential Sources (CS #1 and CS #2).

10.    In early September 2012, case agents interviewed Confidential Source #1 (CS #1), who stated that an individual known as Robert Lee received multi-pound shipments of high-grade marijuana in the mail between June and August of 2012.   CS #1 observed Lee receive two separate packages, each of which contained at least 20 pounds of high-grade, vacuumed

sealed marijuana. Lee "bragged" to CS #1 about being paid $1,200 for accepting the marijuana packages in his name on behalf of Paul Heiniger.

11. According to CS #1, Lee and Heiniger are unemployed. However, CS #1 has seen Heiniger with thousands of dollars in cash and knows that Heiniger recently purchased a used vehicle for $6,000 in cash. CS #1 also observed Heiniger at his apartment on East Dekora Street in Saukville with four large rolls of cash that Heiniger claimed to contain $10,000 each. CS #1 stated that Heiniger and Lee claim that they have made over $100,000 per month selling marijuana.

12. Case agents believe the information provided by CS #1 to be truthful and reliable because CS #1 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, as well as other areas in the United States, which case agents have been able to verify through independent investigation. CS #1 has also made statements against CS #1's own penal interests. CS #1 has no criminal charges pending in State or Federal court. CS #1 is cooperating with law enforcement in order to be a good citizen. CS #1 has not received any payment for information provided to law enforcement. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

13. Based on publicly available records, case agents are aware that on August 20, 2003, Paul R. Heiniger was convicted of felony possession of narcotics. In 2008, Heiniger was charged with possession of THC and possession of drug paraphernalia.

14. Heiniger and Lee told CS #1 that sometime during the month of September 2012 they would be flying to California to "work" clipping and trimming marijuana plants. Heiniger and Lee stated they could make $800 to $1,000 per day in cash for trimming marijuana. CS #1

stated Heiniger often traveled to California via commercial airline to purchase marijuana and have it shipped back to Saukville. According to CS#1, when Heiniger returned to Milwaukee, he would deliver the marijuana to his friends on "credit" and these friends sold the marijuana. Heiniger sold marijuana in pound quantities, and Lee sold marijuana in smaller quantities. Based on review of Facebook, case agents are aware that on September 25, 2012, Heiniger posted on his Facebook profile page that he was in California, and on December 28, 2012, Heiniger updated his residence status on his Facebook page to Mendocino County. Heiniger later registered a blue 2007 Chevrolet Monte Carlo in California in his name at **1715 Elm Ln. Willits, CA,** which is in Mendocino County. Based on their training and experience, case agents know that Mendocino County, California is known as a source county for large amounts of high-grade marijuana that is grown there, and then sold throughout the United States.

15. On September 6, 2012, Edward Patterson was arrested on Interstate 80 in Washoe County, Nevada with 32.66 pounds of marijuana. At the time of his arrest, Patterson informed Nevada Law Enforcement that he was the owner of a McDonald's restaurant and needed the money to "expand" his restaurant businesses. At the time of his arrest, Patterson was utilizing a cellular telephone assigned telephone number (414) 659-7771. According to records obtained from the State of Wisconsin's Department of Financial Institutions (DFI), the McDonald's restaurants located at **11250 N. Port Washington Road, Mequon, WI** and **8739 N. Port Washington Road, Fox Point, WI** are operated under Fast Eddy's, LLC., incorporated on August 15, 2005. The listed organizers for Fast Eddy's, LLC are Edward Patterson and James E. Patterson. Additionally, the McDonald's restaurant located at **5344 N. Port Washington Road, Glendale, WI** is operated under Hotter Faster Eddy's, LLC., incorporated on November 2, 2012. The listed organizer for Hotter Faster Eddy's, LLC is Edward M. Patterson.

16. On November 20, 2012, United States Postal Inspectors identified a suspicious package addressed to CS #2 from Bryan Fadder 9952 Richards Avenue, Live Oak, CA 95953. After a canine officer alerted to the potential presence of narcotics in the package, a search warrant was obtained and approximately 7.2 pounds of marijuana was recovered. Case agents delivered the package to CS #2's address. CS #2 admitted to receiving marijuana packages in the mail for Edward Patterson. CS #2 stated that s/he received a discounted price on two pounds of marijuana for accepting the shipment, and then delivered the remaining five pounds to Patterson.

17. CS #2 stated that s/he began selling marijuana in October 2011. Around the beginning of May of 2012, CS #2 met Patterson through John Webler, who works as the Manager at a McDonalds in Sussex, WI. At first, CS #2 only knew that Patterson was associated with McDonalds. CS #2 had provided a small quantity of marijuana to Webler prior to May of 2012. Webler stated that he knew someone who sold high-grade marijuana, and Webler sold 2 ounces of high-grade marijuana to CS #2 on two different occasions.

18. Case agents believe the information provided by CS #2 to be truthful and reliable because CS #2 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, as well as other areas in the United States, which case agents have been able to verify through independent investigation. CS #2 has also made statements against CS #2's own penal interests. CS #2 has not received any payment for information provided to law enforcement. Finally, CS #2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

19. In May 2012, when CS #2 told Webler that s/he wanted to purchase a quarter-pound quantity of marijuana, Webler told CS #2 to call Edward Patterson at (414) 659-7771.

CS#2 met Patterson at his residence, **110 E. Belle Ave. in Whitefish Bay, WI.** Before the meeting, Patterson texted CS #2, "If you turn me in (to police), I'll feed your balls to my dog." During this meeting at **110 E. Belle Ave. in Whitefish Bay, WI**, Patterson showed CS #2 approximately four ounces of marijuana, which Patterson stored in a tool chest in his detached garage. According to publicly available records, **110 E. Belle Ave. in Whitefish Bay, WI.** is owned by Edward M. Patterson.

20. CS #2 asked Patterson what he did for a living, and Patterson informed CS #2 that Patterson owned "a couple" McDonald's Restaurants, and agreed to sell CS #2 marijuana on a regular basis. About 5 or 6 days later, CS #2 went back to Patterson's residence at **110 E. Belle Ave. Whitefish Bay, WI**, and purchased a quarter pound of marijuana. CS #2 estimated purchasing approximately 15 pounds of marijuana during July of 2012. Some of this marijuana was fronted, and some paid for in cash. By mid-August of 2012, CS #2 was obtaining one pound quantities of marijuana from Patterson for $4,200 per pound. CS #2 estimated obtaining between 15 and 20 pounds during the month of August of 2012. CS #2 would almost always meet Patterson at his residence, **110 E. Belle Ave., Whitefish Bay**.

21. CS#2 also conducted marijuana transactions with Patterson at other locations including, but not limited to, the McDonald's located at **5344 N. Port Washington Rd. Glendale, WI.** CS #2 estimated doing approximately 10 marijuana deals at the McDonald's at **5344 N. Port Washington Rd. Glendale, WI** in 2012.

22. During multiple conversations, Patterson told CS #2 that he had a "long haired hippie friend" that obtained the marijuana for him. Patterson never mentioned a name, but said that he was involved in marijuana sales, and that he had connections for marijuana in California. Patterson told CS #2 that the "hippie guy" was the one who knew botany, and "how to do

everything." Based on all of the conversations regarding the "hippie guy," CS #2 believes that Patterson is being supplied by "hippie guy." According to DMV records and based upon surveillance, case agents are aware that Paul Heiniger has long brown hair and matches the description of the hippie guy. Therefore, based on their training and experience, and the investigation to date, case agents believe Patterson's source of supply of marijuana is Paul Heiniger.

23. According to CS#2, during the summer of 2012, Patterson went to California to obtain higher quality marijuana for a cheaper price. Patterson talked to CS #2 about prices in California versus Milwaukee, and mentioned "investing" in California. According to CS #2 around August of 2012, Patterson, his high-school aged son and the "hippie dude" went to California to purchase marijuana. CS #2 did not know how they got to California, but knew that they all three drove back to Wisconsin from California with multiple pounds of marijuana. According to grand jury subpoena information, the American Express credit card issued to Edward Patterson, doing business as Fast Eddy's LLC, was used to purchase flights on US Airways tickets departing Milwaukee on August 13, 2012 for San Francisco, California, for Edward M. Patterson, Paul Heiniger, Isiah Patterson, Bernardo Espinosa Vanudios, Jr. (Bernardo Espinosa-Zamudio, Jr.) and Kevin M. Lange. Isiah Patterson is believed to be Edward Patterson's son. Case agents are aware that Bernardo Espinosa-Zamudio has a juvenile conviction for possession of marijuana.

24. According to CS#2, after Patterson was stopped and arrested in Reno, Nevada, Patterson said that he was going to start the "mail thing," sending marijuana packages to Milwaukee from California via the United States Postal Service. Patterson said this method was more expensive, but safer. Patterson told CS #2 that by utilizing this method, Patterson would

send multiple packages containing marijuana to multiple houses in the Milwaukee area. Patterson stated that the parcels could not exceed a certain weight limit, so he only put a few pounds of marijuana in each package. Patterson told CS #2 that Patterson was shipping anywhere from 30 to 60 pounds a month from California to Milwaukee, WI during the fall months of 2012. Patterson would use "clean" boxes which were either new or nice looking. During the fall and winter months of 2012, CS #2 has observed numerous boxes in Patterson's garage at **110 E. Belle Avenue, Whitefish Bay, WI.**

25.     CS #2 has received shipments of marijuana in the mail on behalf of Patterson. The first package arrived during the end of October or beginning of November of 2012. CS #2 recalled this shipment to contain 5 pounds of marijuana. CS #2 took 3 pounds out for CS #2 to sell, and was to give the other 2 pounds to Patterson. When the package arrived, CS #2 called Patterson, and Patterson told CS #2 to keep the marijuana, and to bring the money to Patterson once it was sold. CS #2 recalled selling all 5 pounds of marijuana for $4,100 per pound. CS #2 gave Patterson $3,300 per pound for the 3 pounds that were for CS #2 and $3,900 per pound for the other 2 pounds which were supposed to go to Patterson.

26.     On November 27, 2012, case agents followed Patterson from **110 E. Belle Ave., Whitefish Bay, WI** to the McDonalds restaurant located at **5344 N. Port Washington Road, Glendale, WI**, where he met his father, James Patterson. Patterson, his father, and several unknown female subjects went across the street to the La Quinta Inn and Suites, located at 5110 N. Port Washington Rd., where Patterson was observed entering the hotel with a large suitcase. Case agents then observed numerous vehicles arrive at the hotel. Based on their training and experience, and the investigation to date, case agents believe that Patterson distributed marijuana to these individuals from the hotel. Thereafter, an unidentified white male wearing a black

backpack walked from the Glendale McDonald's, **5344 N. Port Washington Road, Glendale, WI,** to the La Quinta and entered the hotel. Approximately 45 minutes later the same unidentified white male exited the La Quinta without the backpack and returned to **5344 N. Port Washington Road, Glendale, WI,** where he works. Based on their training and experience, and the investigation to date, case agents believe that Patterson instructed the individual to bring him a marijuana package.

27. On November 30, 2012, under the direction and control of case agents, CS #2 placed a text message to Patterson at 414-659-7771. CS #2 arranged to meet with Patterson at his residence, **110 E. Belle Ave., Whitefish Bay, WI**. During the meet, CS #2 asked Patterson for $2,500 that CS #2 had previously given him for a marijuana debt. Patterson told CS #2 that he had given the $2,500 to the supplier, who wanted additional money from CS #2 to pay for the lost marijuana intercepted by law enforcement on November 20, 2012. Shortly after arriving, CS #2 observed that there was an un-holstered black colored pistol, which was out in the open sitting on a flat area attached to the bar-b-que grill. During the meeting, Patterson moved the pistol from the grill into the garage, and made it clear that CS #2 would see the pistol as Patterson was moving it. CS #2 took this as a threat, and stated that CS #2 was scared that Patterson was going to harm CS #2. Patterson also told CS #2 that the police were probably watching CS #2. Patterson said that he and the supplier (believed to be Paul Heiniger) were having a hard time believing CS #2's story. Patterson told CS #2 that Patterson's arrest in Nevada was "different," and that "He" (the supplier) didn't believe CS #2's story because Wisconsin is pretty tough on Marijuana laws. Patterson then asked CS #2 if CS #2 was working as "an informant." Case agents listened to the recorded conversation, which is consistent with CS#2's version of events.

28. CS #2 stated that Patterson kept large quantities of marijuana in the detached

garage and in his basement at **110 E. Belle Ave. Whitefish Bay, WI**. Smaller quantities of marijuana were kept in a red tool box with a locking bottom drawer. Larger quantities of marijuana were kept in a white cupboard hanging on the wall of the garage next to the tool box. The full pound quantities of marijuana were kept in the garage attic inside of Rubbermaid style totes. Patterson also keeps larger pound quantities of marijuana in the basement of Patterson's residence.

29.     On February 14, 2013, acting under the direction and control of case agents, CS #2 placed a text message to Patterson at 414-659-7771, informing Patterson that CS #2 wanted to meet. Patterson agreed, and directed CS #2 to Patterson's residence at **110 E. Belle Avenue, Whitefish Bay, WI**. During the meeting, CS #2 said that s/he had a customer who wanted to purchase marijuana from Patterson. Patterson agreed to meeting CS #2's customer to conduct marijuana transactions, and stated that "Andrea" (Marquardt) would deal with CS #2' customer instead of Patterson. Patterson said that the marijuana he had right now was better and cheaper than what CS #2 had obtained in the past. The top end marijuana sold for $4,000 per pound, and the lower grade was around $3,400 per pound. Patterson told CS #2 that he had just bought another McDonald's restaurant by Bayshore Mall. Case agents are aware that the McDonald's restaurant located at **5344 N. Port Washington Rd. Glendale, WI** is next to Bayshore Mall. Patterson then told CS #2 that he wanted to make sure that CS #2 had "no other agendas" or needed someone to "set up." Case agents reviewed the recording and determined that it is consistent with CS#2's version of events.

### Arrest of Kevin Breitzman on February 4, 2013.

30.     CS #2 identified other members of Patterson's marijuana trafficking organization, one of which CS #2 identified as "Kevin". CS #2 stated that during the fall months of 2012, Patterson was in Seattle, Washington on business. While Patterson was in Seattle, Patterson told CS #2 to obtain marijuana from "Kevin." CS #2 provided case agents with a cellular telephone for "Kevin" of 414-232-0083. "Kevin" was also the manager of the McDonald's restaurant located in Mequon, WI, **11250 N. Port Washington Road, Mequon, WI**. CS #2 had purchased marijuana from "Kevin" at Patterson's direction inside of "Kevin's" apartment. "Kevin" was later identified by case agents as Patterson's brother in-law, Kevin Breitzman.

31.     Case agents learned that on February 4, 2013, the California Highway Patrol conducted a traffic stop of a vehicle driven by Kevin Breitzman on Hwy. 101 in Sonoma County, California. Troopers smelled a slight odor of marijuana coming from within the vehicle. When Troopers asked Breitzman about the odor, he initially denied having marijuana in the vehicle. Breitzman then removed a small amount of marijuana from a backpack on the front seat. During a subsequent search of the vehicle, Troopers located 2 empty boxes for commercial grade vacuum sealer bags, used latex gloves, a packing tape gun with tape, receipts, airline flight itinerary and boarding passes, rental car summary, miscellaneous papers, including a receipt from Home Depot showing the purchase of nine (9) buckets, a cellular telephone, and seven (7) cardboard boxes. Each of the boxes was determined to contain one (1) 5 gallon orange Home Depot Paint Bucket. Inside of each bucket was sealed packages of marijuana inside vacuum sealed bags. The total weight of marijuana seized was determined to be approximately 22.2 pounds. Several of the receipts seized from the vehicle showed purchases for the tape, boxes, packing materials, buckets, and United States Postal Service Shipments. Breitzman was arrested for Possession of Marijuana for Sales and Transportation of Marijuana for Sales.

18

32.     Case agents reviewed the booking form from the Sonoma County Jail. Breitzman listed an address of 1420 E. Capital Drive, Apartment #105, Shorewood, Wisconsin, and Breitzman provided a telephone number of 414-232-0083. Breitzman listed "McDonalds" as his employer, and his occupation as "Supervisor." Breitzman listed "Ed Patterson" as an emergency contact name, and his relationship as "brother" with an unknown address.

33.     Case agents examined the documents seized from the traffic stop, and observed that Breitzman rented a vehicle from Enterprise Rental Car on Saturday, February 2, 2013, and was scheduled to return the vehicle on Monday, February 4, 2013. Breitzman listed a phone number of 414-232-0083 for the rental, and provided an email address of ed.Patterson@partners.mcd.com. Located in Breitzman's vehicle at the time of his arrest was a business card for Ed Patterson listing Patterson as the owner of Mequon McDonald's (**11250 N. Port Washington Rd. Mequon, WI**) and Fox Point McDonald's (**8739 N. Port Washington Rd. Fox Point, WI**) restaurants. Also located was a typed letter on McDonald's letterhead stating "To Whom It May Concern: I am authorizing my employee, Kevin Breitzman to use my Business Gold American Express between the dates of 2-2-13 thru 2-5-13. He will be traveling to California on business, may use the card for car, hotel, gas, food and incidentals. If you have any questions, feel free to ask. 414-659-7771, Thanks, Edward Patterson." The letter had a signature below the name, and is believed to be signed by Edward Patterson.

34.     Case agents reviewed the receipts located in the vehicle, and observed a receipt from C&M Self Storage in Ukiah, CA showing the purchase of one (1) tape gun with tape, four (4) large rolls of bubble wrap, and nine (9) Small Boxes, for a total of $58.53 paid in cash. Agents also observed Home Depot receipts from Ukiah, CA showing the purchase of nine (9) five gallon buckets and nine (9) lids for the buckets. These items were also paid for in cash.

35. Case agents observed a receipt from the Ukiah Main Post Office in Ukiah, CA, dated February 4, 2013, at 11:26 am. This receipt showed an Express Mail package sent from this Post Office to "Milwaukee, WI 53221", showing a shipment price of $73.65, which was paid for in cash. This package weighed 7 lbs. 1.2 oz. and showed Label #EI719082615US, with an expected delivery date of February 6, 2013. Also located was a "Customer Copy" of the Express Mail package, for Label #EI719082615US. The sender information was "T. Vargas, 1599 N. Bush St, Ukiah, CA 95482." The package was sent to "Tammy WEBLER **6752 S. 17th Street, Milwaukee, WI 53221**." A federal search warrant was obtained for this parcel, which was found to contain approximately 1,531 grams of high-grade marijuana.

36. Case agents observed an additional receipt from the Talmage PO in Ukiah, CA, dated February 4, 2013, at 12:03 pm. This receipt showed a Priority Mail package sent from this Post Office to "Andrea Marquardt at **N16W26587 Bluegrass Lane, Pewaukee, WI 53072**," with a shipment price of $44.60, which was paid for in cash. This package weighed 7 lbs., 2 ounces, and showed Label #9505510666193035433800, with an expected delivery date of February 7, 2013. Based on their training and experience, and the investigation to date, case agents believe this parcel contained marijuana.

37. On February 26, 2013, a federal search warrant was issued for the mobile telephone bearing telephone number 414-232-0083, which was seized from Kevin Breitzman at the time of his arrest on February 4, 2013. A review of the text messages sent by 414-232-0083 reflect that Breitzman was in contact with Patterson and Heiniger prior to his arrest.

- On January 31, 2013, Patterson sent a text to Breitzman stating "Ok, I'll tell him 6:30 Culvers, give him an OG, also if u can sell that garbage weed, go ahead."

- On February 1, 2013, Breitzman sent a text to Patterson stating "So what time do I have leave at tomorrow." Later in the day Patterson texted Breitzman "Ok just booked, 10:56am, we will meet at 8:30, I'll get u the cash and paperwork"

- On February 2, 2013, Patterson texted Breitzman "3 min away I'll pick u up in back" and "WEBLER isn't on that sheet, so sometime tomorrow call me I'll get u his info, also Dallas got evicted so can't use him" (Agent note: Dallas is believed to be Dallas Treder, now residing at **525 Dunbar Avenue, #3, Waukesha, WI**) Breitzman responded "Ok". Patterson texted " Thanks buddy, love u man!!" About 40 minutes later, Breitzman texted Patterson "Thanks man. In clean." (Agent note: it is believed this in reference to making it through TSA Security with US Currency to be used for the purchase of marijuana)

- Later in the evening on February 2, 2013, Breitzman texted Patterson "Just landed". Patterson texted back "Ok thanks bud I freaked out for a min went online tho, check in with P" (Paul Heiniger) and "262-278-9916" (the telephone number used by Heiniger). Patterson texted Breitzman "No detours buddy, be as careful as past or more, only diff is its all my money vs 5 people's, all I got" and "Hey have a nice dinner tomorrow night on me take Paul go get like steaks at a high end joint, get fat and relax"

- On February 3, 2013, Patterson texted Breitzman "I'll call u after game with instructions for tomorrow few changes ok". Breitzman texted back "Ok". Patterson texted Breitzman "As nice as advertised?" Breitzman texted Patterson "Yea" Patterson texted Breitzman "Tell them to throw in a free one for u" (Agent Note: This is believed to be in reference to a free pound of marijuana) Also on February 3, 2013, Breitzman texted Paul "U up yet. Wanna try purple nurple" (strain of high-grade marijuana).

### Information Obtained by Surveillance of Patterson DTO.

38.     On February 26, 2013, surveillance was conducted on Edward Patterson at **110 E. Belle Avenue, Whitefish Bay, WI**. At approximately 11:40 am, Patterson exited **110 E. Belle Avenue, Whitefish Bay, WI** in a silver 2006 BMW 525XI bearing Wisconsin license plate 257HZJ, which is registered to Tanya L. Patterson, Patterson's wife. The vehicle traveled to Ace Hardware, located at 6240 N. Port Washington Road, Glendale, WI. When Patterson exited Ace Hardware, he carried several white 5 gallon buckets. Patterson then returned **110 E. Belle Avenue, Whitefish Bay, WI**, taking several buckets inside with him. At approximately 12:50 pm, Andrea Marquardt arrived at **110 E. Belle Avenue, Whitefish Bay, WI**, carrying only a purse.

21

39.    At approximately 1:49 pm Marquardt exited **110 E. Belle Avenue, Whitefish Bay, WI** and quickly walked to her vehicle, carrying a large black garbage bag which appeared to be full. At approximately 1:55 pm Patterson and Marquardt exited **110 E. Belle Avenue, Whitefish Bay, WI** and walked to their vehicles. Patterson carried a white bucket, which he placed inside his BMW. Marquardt followed Patterson to the Kohl's parking lot at 5650 N. Bayshore Dr., Glendale, WI, where they parked next to a red Chevrolet S10 pickup truck.    Per CS #2, this is a location where Patterson and Marquardt had done drug transactions in the past. An unidentified white male with gray hair exited his vehicle and walked to Patterson's BMW and opened the front passenger side door and leaned inside. Based on their training and experience, and the investigation to date, case agents believe that Patterson and Marquardt provided the unknown male with an unknown quantity of marijuana.

40.    At approximately 2:08 pm Patterson and Marquardt drove to the McDonald's restaurant located at **5344 N. Port Washington Rd. in Glendale, WI**. Patterson and Marquardt parked in the McDonald's parking lot and met with a then-unknown male subject (later identified as CS #3). CS #3 exited CS #3's vehicle and entered into Patterson's BMW. Approximately one minute later, CS #3 exited Patterson's vehicle and carried an object in CS #3's arms. The object was covered by a jacket. CS #3 quickly placed the object in CS #3's vehicle and drove away. Patterson and Marquardt also left the parking lot.  Based on the activities observed by case agents that day, case agents believe that Patterson and Marquardt distributed marijuana to CS#3.

41.    On March 7, 2013, United States Magistrate Judge Patricia J. Gorence, from the Eastern District of Wisconsin, signed a warrant for an Electronic Tracking Device (GPS) to be installed on Patterson's 2012 Ford F-350 Super Duty Pick-Up Truck, bearing Wisconsin Registration EC47520. Surveillance reflects that in the process of conducting his

drug transactions, Patterson drives to and from his residence on **110 E. Belle Avenue, Whitefish Bay, WI** to the McDonalds' restaurants located at **5344 N. Port Washington Road, Glendale, WI**, **11250 N. Port Washington Road, Mequon, WI**, or **8739 N. Port Washington Road, Fox Point, WI**. For example, on April 4, 2013, at approximately 3:05 pm, case agents observed Patterson's truck parked at the McDonald's restaurant at **11250 N. Port Washington Rd. Mequon, WI**. At approximately 3:15 pm, Marquardt arrived in her green Toyota Camry and parked directly next to Patterson's truck. A short time later, Patterson exited the Mequon McDonald's **11250 N. Port Washington Rd. Mequon, WI**, and walked to his vehicle, where he met with Marquardt inside the truck. Minutes later, Patterson exited the driver's side, opened the rear door and appeared to retrieve an item. Patterson then re-entered the front driver's seat. At approximately 3:45 pm, Marquardt exited the vehicle carrying a plastic grocery style bag, which appeared to contain something. Marquardt then walked to her car and placed the plastic bag inside the trunk. Patterson walked back inside the McDonald's, **11250 N. Port Washington Rd. Mequon, WI**, and Marquardt drove away. Based on their training and experience, and the investigation to date, case agents believe that Marquardt obtained marijuana from Patterson.

42. As another example, on April 9, 2013, surveillance was conducted at Patterson's residence located at **110 E. Belle Ave. in Whitefish Bay, WI**. At approximately 10:15 am, case agents observed a gray 2005 GMC Envoy bearing Wisconsin registration #HM9609 registered to Paul R. Markiewicz arrive at **110 E. Belle Ave. in Whitefish Bay, WI**. A male later identified as Paul Markiewicz (who was subsequently identified as an employee of Patterson's McDonalds restaurants) exited the vehicle and entered Patterson's residence. At approximately 10:20 am Markiewicz exited **110 E. Belle Ave. in Whitefish Bay, WI**, and drove away. At approximately 10:50 am, Andrea Marquardt arrived at **110 E. Belle Ave. in Whitefish Bay, WI** in her green

2011 Toyota Camry. At approximately 11:05 am Markiewicz returned to **110 E. Belle Ave. in Whitefish Bay, WI,** where he parked near Marquardt's vehicle and met with her at the driver's side of her car. At approximately 11:09 am Markiewicz returned to the gray GMC Envoy and retrieved a brown paper grocery bag from inside his vehicle.

43.     At approximately 11:11 am, Breitzman arrived at **110 E. Belle Ave. Whitefish Bay, WI** in his 1999 maroon with silver trim GMC Astro van, WI #844-TJG registered to Kevin Breitzman. Breitzman exited his van and went into **110 E. Belle Ave. in Whitefish Bay, WI**. At 11:20 am Breitzman, Markiewicz, and Marquardt left Patterson's residence at **110 E. Belle Ave. Whitefish Bay, WI**. At approximately 12:10 pm Marquardt pulled into the shopping center lot and parked to the east of the Walgreens Drug Store located at 6442 N. 76th Street and met with two unidentified black females. Based on their training and experience, and the investigation to date, case agents believe that Marquardt provided marijuana she obtained from **110 E. Belle Ave. Whitefish Bay, WI** to marijuana customers. At approximately 12:51 pm, Patterson exited his home carrying a dark colored plastic bag. Patterson placed the plastic bag in the rear driver's side area. Patterson drove to the Glendale McDonald's at **5344 North Port Washington Road, Glendale WI** and parked behind the restaurant and next to Breitzman's vehicle on N. Iroquois Ave. Iroquois Avenue runs parallel to Port Washington Road; the McDonalds restaurant and parking lot runs from Iroquois to Port Washington Road. At approximately 1:01 pm, Patterson and Breitzman met by their vehicles. Patterson then drove to the alley behind **2542 N. Holton Street, Milwaukee, WI** (Espinosa-Zamudio's residence). At approximately 1:16 pm Patterson exited the rear of the residence at **2542 N. Holton Street**. Patterson entered his vehicle and departed the area. At approximately 2:16 pm Markiewicz arrived back at Patterson's residence at **110 E. Belle Ave. in Whitefish Bay, WI**. Markiewicz exited the Envoy and removed a dark

colored bag (similar to a duffle bag) and a cardboard box, then went into the residence. At approximately 2:19 pm Markiewicz exited Patterson's home with the dark colored bag, placed the bag in the rear of the vehicle and drove away. At approximately 2:52 pm Patterson entered his Ford truck and drove to the rear of the Glendale McDonald's restaurant, **5344 N. Port Washington Road, Glendale, WI**. At approximately 2:55 pm Patterson parked next to Breitzman's 1998 GMC Astro van on N. Iroquois Ave. Patterson exited his vehicle and met with Breitzman. At approximately 2:56 pm Patterson left the **Glendale McDonald's** and drove to the Bayshore Shopping Center where surveillance was terminated. It is case agents belief that Patterson was distributing marijuana that day to several individuals.

44.    On May 2, 2013, at approximately 10:35 am, case agents observed Markiewicz's red Chevrolet S10 pick-up truck parked at the **Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI**. A short time later, Markiewicz left in his vehicle. Then, at approximately 10:52 am, case agents observed Breitzman's vehicle parked on North Iroquois Avenue, directly behind the Glendale McDonald's **5344 N. Port Washington Road, Glendale, WI**. Approximately 15 minutes later, case agents observed Breitzman carrying what appeared to be a small brown paper bag in his hand, enter his van, and leave. Based on their training and experience, and the investigation to date, case agents believe that the bag in Breitzman's possession contained marijuana or drug proceeds.

45.    A short time later, Breitzman arrived at his new residence, **5649 N. River Forest Drive, Glendale, WI.** Review of the court-authorized GPS data for Patterson's truck revealed that earlier on May 2, he went to **5649 N. River Forest Drive, Glendale, WI.** Shortly after arriving, Breitzman left **5649 N. River Forest Dr.,** and returned to the **Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI**. Then, at 12:46 pm, case agents observed

Patterson arrive at his residence **110 E. Belle Avenue, Whitefish Bay, WI** in a white Ford F350 pick-up truck, where Paul Heiniger arrived a short time later. Patterson later returned to the **Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI.** Then, at approximately 4:23 pm, case agents observed Breitzman at Patterson's residence **110 E. Belle Avenue, Whitefish Bay, WI**, where the two were observed in the garage. Thereafter, Breitzman exited the garage and walked back to his van carrying a package under his arm. Based on their training and experience, and the investigation to date, case agents believe that Breitzman obtained a quantity of marijuana from Patterson.

46. Approximately 15 minutes later, case agents observed Breitzman arrive at the **Fox Point McDonald's** located at **8739 N. Port Washington Rd. in Fox Point,** where he parked his van on the north side of the parking lot. At approximately 4:57 pm, agents observed a white male subject exit the **Fox Point McDonald's** and meet with Breitzman at his van. The subject appeared to be a manager at the McDonald's and was dressed in a button-down shirt with a tie, black dress pants, and a name tag on his shirt. The subject handed an object to Breitzman then returned to the McDonald's. At approximately 4:58 pm, agents observed a white male subject wearing a blue hooded sweatshirt and tan pants walk from the McDonald's to Breitzman's van. The subject entered Breitzman's van on the front passenger side. The subject then exited Breitzman's van carrying a white paper bag in his hand. Based on case agents training and experience, as well as the investigation to date, case agents believe that Breitzman conducted drug transactions and/or money pickups at **8739 N. Port Washington Rd. in Fox Point** on behalf of Patterson.

#### Information Provided by CS #3 and CS #4.

47. On May 15, 2013, case agents interviewed CS #3. CS #3 knows an individual

named Edward Patterson, who is the owner of several McDonald's restaurants including the McDonald's restaurants located in Mequon, Fox Point, and Glendale. CS #3 has been providing information to case agents since May 2013. Case agents believe the information provided by CS #3 to be truthful and reliable because CS #3 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, which case agents have been able to verify through independent investigation. CS #3 has also made statements against CS #3's own penal interests. CS #3 has criminal charges pending in State court, and is cooperating with law enforcement in order to gain consideration for those charges. CS #3 has not received any payment for information provided to law enforcement. Finally, CS #3 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

48.     CS #3 stated that Patterson has a larger office at the Mequon location **11250 N. Port Washington Road** that seemed to be just for Patterson. The Fox Point McDonalds at **8739 North Port Washington Road**, and Glendale McDonald's **5344 N. Port Washington Road,** don't have a large office for Patterson, and only have a small office space for managers to use. Patterson holds manager meetings at all the McDonalds locations.

49.     CS #3 provided a cellular telephone number of 414-659-7771 for Patterson. CS #3 stated that Patterson has numerous McDonald's telephone lines that Patterson gives to employees. The 659-7771 number is the only number that CS #3 had for Patterson. CS #3 did not know of Patterson using any other telephone numbers. Patterson lives in Whitefish Bay, Wisconsin, and lives in a two story brick house on a corner. The back yard has a fence, and a detached garage. Patterson drives a newer white cab and a half pickup truck. Patterson also drives a newer gray colored 4 door BMW. Patterson is married, and has a son who is around high

school age.

50.    CS #3 met Patterson about 6 months prior to the interview. CS #3 worked at all three of Edward Patterson's McDonald's locations, Fox Point, Mequon, and Glendale. When CS #3 met Patterson, CS #3 was working at Glendale McDonald's, **5344 N. Port Washington Road, Glendale, WI.** Patterson asked CS #3 if CS #3 smoked marijuana, and CS #3 stated yes. Patterson asked if CS #3 could sell marijuana, which CS #3 stated yes. Patterson then began fronting 1 pound quantities of marijuana to CS #3. CS #3 recalled being charged $3,500 per pound.

51.    The CS #3 would normally meet Patterson behind the Glendale McDonald's, **5344 N. Port Washington Road, Glendale, WI** to obtain the marijuana. Per CS #3, there is a small street (which case agents know to be N. Iroquois Avenue) behind the McDonald's restaurant, and Patterson would meet several individuals at one time to distribute the marijuana from that location. CS #3 has observed three to four other individuals picking up marijuana from Patterson during each time CS #3 obtained marijuana from Patterson. CS #3 has also obtained marijuana from Patterson on two occasions at Patterson's residence at **110 E. Belle Avenue, Whitefish Bay, WI.** These deals occurred in the detached garage. CS #3 observed a table with scales and vacuum sealers where Patterson would weigh out the marijuana to be sold. Patterson kept the marijuana in five gallon buckets in the garage.

52.    CS #3 knows that Patterson is obtaining high-grade marijuana from a source in California. Patterson also told CS #3 that Patterson has an alternate source of supply in the Milwaukee area when the California marijuana isn't available. CS #3 did not know any names of these individuals. Patterson told CS #3 that one of Patterson's associates was caught in California with about 25 pounds of marijuana. Patterson had sent this individual out to obtain

marijuana for Patterson, but the individual was arrested. Patterson told CS #3 that Patterson lost over $40,000 from that arrest. Case agents believe that Patterson was referring to the arrest of Kevin Breitzman on February 4, 2013.

53.     When CS #3 first met Patterson, Patterson told CS #3 that it was "shipped", and then later told CS #3 that Patterson would send people out to California to get the marijuana for Patterson. Patterson told CS #3 that the last few times Patterson had sent people out, there were money problems (such as money shortages) when they arrived to meet the supplier. Some of Patterson's people have been "caught" (by law enforcement) in California as well. CS #3 said that Patterson sometimes spreads the marijuana around to various individuals to store for Patterson in addition to keeping marijuana at Patterson's residence at **110 E. Belle Avenue, Whitefish Bay, WI.** CS #3 stated that Patterson's wife complains about Patterson storing marijuana at the house.

54.     CS #3 stated that on one occasion, Patterson told CS #3 that Patterson had "lost a package," and Patterson had sent one of his girls to go get the package. CS #3 asked Patterson if Patterson was nervous about sending her to get it, and Patterson said he wasn't because the girl was blond, blue-eyed, pretty, and skinny so nobody would suspect that she was doing something illegal (This physical description matches that of Andrea Marquardt). CS #3 stated that Patterson has "a lot" of money, and can get out of trouble because Patterson "is rich."

55.     On numerous occasions since May 28, 2013, case agents have interviewed CS #4 regarding Edward Patterson and the DTO. CS #4 has been providing information to case agents since May 2013. Case agents believe the information provided by CS #4 to be truthful and reliable because CS #4 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, as well as the United States, which case agents have been able to

verify through independent investigation. CS #4 has also made statements against CS #4's own penal interests. CS #4 has no criminal charges pending in State or Federal court, and is cooperating with law enforcement in order to gain consideration for CS #3 pending charges in State court. CS #4 has not received any payment for information provided to law enforcement. Finally, CS #4 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

56.    CS #4 is an employee of the McDonald's restaurants located in Mequon, Fox Point, and Glendale, WI. CS #4 stated the three McDonald's are owned by Edward Patterson, who resides in Whitefish Bay, WI. CS #4 has been a long term employee for Patterson and holds a supervisor position. CS #4's responsibilities at Patterson's three McDonald's locations (Fox Point, Mequon, and Glendale) include overseeing training and development of managers, maintaining employee schedules, reviewing mid-month and end-month sales, food, and labor summaries, reviewing profit and loss summaries, handling daily cash deposits, and conducting register counts several times throughout the day.

57.    CS #4 stated that Patterson told CS #4 that he started selling marijuana last summer (2012) in order to earn money to purchase the McDonald's located in Glendale, WI. Patterson also told CS #4 that he has plans to purchase three (3) additional McDonald's in the future including the McDonald's located on Brown Deer Rd. at Green Bay Rd., one on Good Hope Rd., and a third located somewhere on Capitol Drive. Patterson told CS #4 that he plans on selling marijuana enough to reach a two million dollar profit because by that time marijuana will be legalized nationally. Patterson told CS #4 that now is the time to sell marijuana because he can make the largest profit now before it is fully legalized. CS #4 stated that Patterson wanted to purchase or use a semi-truck to transport larger amounts of marijuana from California

58.     CS #4 stated that Patterson is open about the drug trafficking at the Glendale McDonalds, **5344 N. Port Washington Rd.** in Glendale, WI. Patterson openly meets with drug customers at the rear of the McDonalds on a back road behind the restaurant (which case agents know to be N. Iroquois Avenue). CS #4 stated that Patterson routinely drives around with large paint buckets that contain marijuana in Patterson's truck. Patterson talks openly with CS #4 about Patterson's drug trafficking, and mentions that if Patterson ever got pulled over Patterson could be in trouble because of the marijuana in the buckets. Additionally, Kevin Breitzman and Paul Markiewicz, both of whom are McDonald's employees and members of Patterson's DTO speak openly about drug trafficking with CS #4.

59.     CS #4 first became suspicious of Patterson's involvement in drug sales when he began to have managers at the McDonald's exchange smaller bills ($1, $5, $10, & $20 bills) for larger currency amounts ($50 & $100 bills) at local banks. The local banks became suspicious of this and started to deny the exchange requests. CS #4 stated that Patterson also began to take the nightly cash deposits from the three McDonald's for himself and never deposit them. CS #4 stated that employees began to comment that Patterson had run the McDonald's "dry" and that the stores had absolutely no cash on hand because Patterson took all of the deposits. Patterson would tell the managers that he would be at the store shortly and for them to have as much cash money as possible ready for him to pick up when he arrived. CS #4 stated initially Patterson would repay the money deposits before payroll so he could pay his employees, however, since January 2013 he has not repaid all of the money he has removed from the deposits.

60.     Several months ago, CS #4 stated that s/he received a text from Patterson asking

if CS #4 was interested in making some extra money. CS #4 stated that Patterson had a meeting with CS #4 at the Mequon McDonald's, **11250 N. Port Washington Road, Mequon, WI** and told CS #4 that he has a marijuana source in California and that he gets marijuana at a good price. Patterson asked if CS #4 could sell a couple of pounds. CS #4 questioned Patterson about his involvement in selling marijuana, and Patterson replied "how else do you think I could afford the Glendale McDonald's?" Patterson bragged to CS #4 that if CS #4 would get involved in selling marijuana that CS #4 would make a lot of money and that CS #4 would be completely out of debt in a short period of time. CS #4 stated Patterson attempted to recruit CS #4 into assisting him with selling or receiving marijuana packages and believed Patterson has recruited or attempted to recruit other McDonald's employees as well.

61.     Patterson later told CS #4 that he went to California and was arrested with a large amount of marijuana. Patterson said that he was caught with approximately sixty (60) lbs. of marijuana and it cost him approximately $130,000 to get out of the charges. Patterson said that the charges were eventually dropped because it was a bad search of his vehicle. Patterson stated that his father James Patterson had to go there to bail him out.

62.     A couple of weeks later Patterson asked CS #4 to cover his brother in-law Kevin Breitzman's shifts so he could send him to California. CS #4 identified Breitzman as the manager of the Glendale McDonald's, **5344 N. Port Washington Road, Glendale, WI**. A couple of days later CS #4 received a text message from Patterson advising that Breitzman was arrested in California and Patterson needed approximately $3,000 from the cash deposits to wire to Breitzman for bond. Case agents know this to be in reference to Breitzman's arrest in California on February 4, 2013.

63.     Patterson told CS #4 that his "customers" who invested money for the

marijuana were going to be "pissed," and that Breitzman cost him a lot of money. Patterson also told CS #4 that Breitzman had an address book with all of the addresses where the marijuana was to be shipped to confiscated by the police. CS #4 stated a couple of days later Breitzman returned to Wisconsin and that Patterson was concerned that the "shipments" weren't going to arrive in the mail. Patterson told CS #4 that he would send Breitzman to California to meet with Patterson's marijuana source. Breitzman would pay the money to the marijuana source and the two of them would package the marijuana and ship it via US Mail back to Wisconsin. Patterson told CS #4 that he had numerous people who he would pay to receive the marijuana packages in the mail. Patterson told CS #4 that he would pay them approximately $600 to receive each marijuana package. Patterson would then have a girl named "Andrea" retrieve the packages and deliver the packages to him. CS #4 described "Andrea" as a white female with blonde hair who was very thin. CS #4 was unaware of "Andrea's" last name, however based on the investigation to date, and the physical description, "Andrea", is believed to be Andrea Marquardt.

64. Patterson asked if CS #4 would be willing to receive marijuana packages for him in the mail. Patterson was concerned that he needed new addresses to send the marijuana packages to since the police had access to the old addresses from Breitzman's arrest. CS #4 stated when Patterson first approached CS #4 to receive marijuana packages for him in the mail CS #4 initially declined the offer. After some thought CS #4 agreed to provide Patterson with an address where he could send a package. CS #4 provided Patterson with an address near 96th St. and Brown Deer Rd. in the City of Milwaukee. CS #4 stated the address did not belong to CS #4 and that it was an address that CS #4 was familiar with in the past. CS #4 stated Patterson had "Andrea" wait at the address to receive the package. After the package was delivered Patterson paid CS #4 $500 in cash.

65. CS #4 stated Patterson sent a second package to the address CS #4 provided and offered to pay CS #4 $1,200. This time CS #4 refused payment and no longer wanted to have any participation in receiving packages for Patterson. Patterson informed CS #4 that Patterson was willing to pay a premium price because the marijuana was of such good quality that Patterson needed the packages to arrive safely. CS #4 believed that the package was sent to the same address because Patterson later offered to pay CS #4 again, but CS #4 again declined the money.

66. Breitzman told CS #4 that Patterson moved all of his marijuana from his garage over to Breitzman's apartment. CS #4 believed Breitzman lived somewhere on Capitol Drive in an apartment which was paid for by Patterson. Case agents know that during this time, Breitzman was residing at 1420 E. Capitol Drive, #105, Shorewood, WI. Breitzman also told CS #4 that Patterson's wife was upset because Patterson would pull their teenage son "Isaiah" out of school to help him separate, weigh, and repackage marijuana when his shipments would arrive. Breitzman also told CS #4 that Patterson uses his son "Isaiah" to distribute marijuana to other students at Whitefish Bay High School. CS #4 stated Patterson mainly sells marijuana out of his garage when his wife is away at work. When his wife returns home, Patterson goes to the Glendale McDonald's, **5344 N. Port Washington Road, Glendale, WI** parking lot to sell marijuana.

67. On June 24, 2013, a federal search warrant was issued by the Honorable Patricia J. Gorence in the Eastern District of Wisconsin for information associated with AT&T iPhone cellular telephone belonging to CS #4. CS #4 also provided consent for case agents to review her text messages with Edward Patterson. A review of the cell phone content revealed the following drug related text messages between Patterson and CS #4:

- Wednesday, January 30, 2013 Patterson texted "Check H&K those (cigarette disposal units?) look expansive, also (name redacted by agents) went home didn't wanna drive with the Big Macs, tell him the stuff marked OG is actually Mango Kush. ... Tell him there's plenty more all diff kinds ... And Kevin going to drop money next week more coming ... Hey also tell him the first 3250 is mine then he takes profit ok." Patterson also texted "Hey, I didn't really go over ground rules with him, so he has to use cash customers only, meaning he can't front on a front, don't take more than he can move, and don't use the cash until I'm paid. ... He should know all that already but just making sure, it's available all day everyday so don't take more than he can move in 3-4 days // In response to "He (name redacted by case agents) doesn't front ever" Paterson texted "I don't either but I know u guys don't have the money to get started, but he should be able to dig u out in a month or 2... So when I got nailed in Nevada, I had 60 lbs cost me $130,000 I had to call my dad to bail me out, wasn't cool. Then my attorney threatened to sue them for illegal search and they dropped all charges." CS #4 texted ""How was it illegal?" and Patterson texted "Crossing state line, trafficking, it's only legal to smoke, and u have to have a card, unless ur in Washington or Colorado ... Hard to explain an entire car filled is personal use"

- Wednesday, January 30, 2013 CS #4 texted Patterson "Hey Ed is this [CS#3], I weighed it our nd it's only over 1.5 which is 30 not 50 so is 3230 cool???" Patterson texted back "Sure ... wait till I see what's coming next week man, it will fly you"

- Friday, February 01, 2013 Patterson texted CS #4 "I have a lot to do to get Kevin lined up, how is [CS#2] doing" CS #4 texted Patterson "Ok. He's doing good people are just now starting to get in touh just took a few days." Patterson texted CS #4 "I am the connection and no, Longest period is a day or 2. Once all the outdoor is gone prices do go up in spring harder to get, but never out, that's why I say don't take more than u need cuiz he will be selling old when I have new ... So tell him don't try to get rich on this pound, sell it take a profit get another one" Patterson texted CS #4 "Normally once a month... But if it's moving once a week ... You can make money if u let me ship it to ur house too, 600$ a box ... I have 6 addresses so no big deal" CS #4 texted Patterson ""That's crazy. What do u pay kev to go ???" Patterson texted CS #4 "He gives the guy the money, helps him pack it, and ships it back then flies home" CS #4 texted Patterson "Wait so he doesn't actually drive with it", and Patterson responded "No way, it's so risky it ain't funny... They pull over cars as fast as they can... That's how I got caught. 50lbs" CS #4 texted Patterson ""How much $ is that?" Patterson texted back "130,000" (Agent note: $130,000 / 50lbs = $2,600 per pound, which is a market price for a pound of marijuana in Northern California) CS #4 texted Patterson ""Does Tanya know" (Agent note: Tanya is Ed Patterson's wife). Patterson responded "Yeah they all do but think I'm done... I got charged 5 felonies and bail was 150,000; It wasn't cool... CS #4 texted Patterson ""Wow u are one lucky man" and Patterson responded "- Yeah but I lost all that money!! Started with 500$, made all way to 120,000, back to zero, now I'm back to 100... My goal is 2 million." Patterson followed up with "As soon as they legalize its all over. So that's why the time is now" CS #4 texted ""So if u buy 100,000 what profit do u make" Patterson texted "40,000... I could squeeze more but I take care of everyone I

work with... So many rip off fuckers tho, it's sickening... People constantly stealing, I've had 2 bags of money stolen, 25,000 each, one of them ended up being a friend of my dads at FedEx, i had 2 boxes worth 30,000 each stolen. If I didn't have the thing in Nevada and that other shit, I would be at 400,000 maybe more" Patterson then texted "The bank hates me, I'm constantly switching, 20's for 100's... I have like 5 security boxes... That's why I fly someone to California now, because the delivery people are fucks... Delete all this plz."

- Tuesday, February 05, 2013 Patterson texted CS #4 "He (Kevin Breitzman) did something really stupid, haven't found out exactly what, but bailed him out last night, fucker still hasn't called... I don't know anything I'm sure he's scared to call but I need him to, try his cell calm him down... Call no text..." Patterson later texted CS #4 "So dipshit also lost my entire list if addresses, he practically shut me down... I have 10 ready to ship and no where to go!!" CS #4 texted Patterson ""What about the ones Kevin shipped" Patterson texted back "Those people are ok, there's no way WEBLER or anyone can get in trouble... That's really the best job in the whole deal Cuz u know when it's messed up and then refuse package... I didn't order that, get it outta here" Patterson texted CS #4 "1500$ one time please??? ... I promise nothing happen??" CS #4 texted back ""How much is being shipped... When and about what time, also do u have to sign for it" Patterson texted back "No sign, 2 small boxes, normally around noon... Prob this Fri or sat" CS #4 texted Patterson "So either 1500 or what was other option" Patterson texted "Lb...(Agent note: lb is in reference to a pound of marijuana) It's way more than I normally do but I gotta get some $$ for buttfucks lawyer and it's u and wanna help" CS #4 texted Patterson "Will they leave it if know one answers or will they make u pick it up at po" Patterson texted "Leave it... Trust me not my first one all angles are covered... U just can't tell a sole cuz someone steals it we flicked... I have another one that can, but same last name as one on list and makes me nervous" Patterson then texted CS #4 "Normal cost is 500 a box because there is very little risk" and "Not easy finding people that aren't on drugs or thieves... I mean I can't just hand any old asshole 60,000 in cash"

68.    On June 26, CS #4 stated that Patterson called CS #4 on June 24, 2013, and told CS #4 that Patterson was having an emergency meeting on June 25, 2013 at the Glendale McDonald's restaurant, **5344 N. Port Washington Rd. in Glendale, WI**. Patterson told CS #4 that 2 deposits ($4,000 and $1,000) from the Glendale McDonald's restaurants were missing, and that Patterson suspected Kevin Breitzman of stealing the deposits. Patterson told CS #4 that Patterson won't be "held hostage" by Breitzman any longer, and that Breitzman was fired from his position as Manager of the Glendale McDonald's. CS #4 spoke with Patterson, and was texting and speaking to Patterson on the phone. Patterson told CS #4 that Patterson wanted CS

#4 to run the Glendale McDonald's until Patterson could find a replacement for Breitzman.

69. On June 25, 2013, the meeting was held in the lobby at the Glendale McDonald's, 5344 N. Port Washington Rd. in Glendale, WI. During this meeting, Patterson said that Breitzman had been fired from McDonald's, and that Breitzman was no longer allowed on McDonald's property. Patterson also told CS #4 that Breitzman was "broke", and that Patterson had to pay Breitzman's last months' rent on Breitzman's apartment, because Breitzman had moved out, and Patterson's name was on the lease also. Patterson also made a comment that Breitzman had stolen "something else" from Patterson, which CS #4 assumed to be either marijuana or prescription pills. CS #4 asked if Patterson was scared that Breitzman would say something to the police about Patterson's illegal activities, and Patterson told CS #4 "No, I'll kill him", and then laughed. CS #4 stated that s/he did not know where Breitzman was staying at that time but s/he heard from other employees that Breitzman was living with an ex-McDonald employee named Tony Bieniewski. Bieniewski used to be a store manager for Patterson, and resides at **5649 N. River Forest Drive, Glendale, WI**.

70. On July 1, 2013, case agents received additional information regarding text messages sent from Patterson to CS #4. Patterson stated via text to CS #4 that he sent Paul Markiewicz and Kevin Breitzman to California for Breitzman's court date. Patterson stated that he sent Markiewicz with because he couldn't trust Breitzman with a credit card. Patterson stated that Breitzman cleared out what he had in his storage locker, which he estimated to be valued at $2,000. CS #4 asked Patterson if he still sent someone to California for the "other stuff" now that he can't trust Breitzman. Patterson stated that he is "laying low", however, Patterson told CS #4 that this is the time to make the best money. Patterson stated that this should be great for everybody but right now he couldn't trust anyone. Patterson also replied "why would someone

(Breitzman) steal $2,000 when they can make $20,000 over the next six months?"

71.     On July 23, 2013, case agents spoke to CS #4 via telephone regarding the recent development with Edward Patterson, Paul Markiewicz and the DTO. Markiewicz told CS #4 that Patterson sent him with Breitzman to California for Breitzman's court appearance. While in California, Patterson paid Markiewicz to send back marijuana via the US mail. Markiewicz told CS #4 that this was the third time Patterson had sent him to California to purchase marijuana and ship it back to Milwaukee. Markiewicz told CS #4 that Patterson owed him approximately $10,000 for the three times he went to California to mail back marijuana packages.

72.     Markiewicz told CS #4 that Patterson had him meet with an unknown male while in California. Markiewicz and the unidentified male then went "shopping" for marijuana. Based on intelligence gained from Breitzman's previous trip to California in February 2013, case agents believe the subject Markiewicz met in California was Paul Heiniger. (a subsequent search of Markiewicz's telephone showed that Markiewicz had Paul Heiniger's cellular telephone numbers stored in his telephone under the name "Skill Calumet")

73.     Markiewicz told CS #4 that when he returned home from California, Patterson took him, Breitzman, and another McDonald's employee named Benjamin Gibson to Patterson's house, **110 E. Belle Ave. Whitefish Bay, WI 53217** and Patterson's father's house to shred numerous boxes containing paperwork from McDonald's restaurants. Markiewicz stated that they were unsure what the paperwork was for and when they asked Patterson told them to mind their own business.

74.     Additionally, Markiewicz told CS #4 that Patterson was paranoid and couldn't trust anyone. Markiewicz stated that Breitzman stole some marijuana from Patterson's storage shed so Patterson paid off the remainder of the lease for the storage shed **North Shore Storage**

**4390 N. Richards Street, Milwaukee, Wisconsin #38** and moved all of the marijuana to Markiewicz's house **W124 N13025 Wasaukee Road, Village of Germantown, WI** for a couple of days. Patterson then moved the marijuana to another unknown location because he didn't trust Markiewicz. Based upon records obtained pursuant to a grand jury subpoena, case agents are aware that Patterson also maintains a storage unit at **North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin #43.** Markiewicz told CS #4 that Patterson no longer needed to take deposits from the McDonald's because he is "all caught up and ahead of the game". CS #4 also stated that the Glendale McDonald's, **5344 N. Port Washington Rd. in Glendale, WI,** received an anonymous complaint that drugs were being sold at the restaurant. CS #4 stated that Patterson would be made aware of the complaint but it wouldn't be sent to McDonald's Corporation.

75.     On July 31, 2013, case agents interviewed CS #4. Paul Cooper, the manager of the McDonald's at **8739 N. Port Washington Road,** Fox Point, WI, told CS #4 that when he helped move Kevin Breitzman earlier that month, to **5649 N. River Forest Drive, Glendale, WI**, he discovered a drug ledger containing all of Edward Patterson and Breitzman's customers. The ledger listed what each customer purchased, how much they were charged, and when they purchased it. Cooper told CS #4 that he kept the ledger in case Patterson ever decided to fire him. Cooper didn't say what names were listed on the drug ledger, however, did state that most of the people named on the ledger were McDonald's employees. CS #4 also stated that Breitzman was still employed by Patterson, however he was no longer the manager at the Glendale McDonald's. CS #4 stated Breitzman was doing odd and end jobs for Patterson at the Fox Point McDonald's, **8739 N. Port Washington Road, Fox Point, WI**. An employee at the Glendale McDonald's told CS #4 that he needed a raise now that Breitzman was gone because he

wasn't making all of the "extra money on the side." CS #4 believed that Breitzman was selling marijuana to the majority of the Glendale McDonald's staff.

## Addresses used by Patterson DTO to receive marijuana shipments and mail drug proceeds and store marijuana and drug trafficking proceeds.

76.     In addition to CS#4, other informants state that the DTO uses various addresses in and around Milwaukee to receive marijuana shipments and mail drug proceeds. CS #3 stated that Patterson sometimes spreads the marijuana around to various individuals to store for Patterson in addition to keeping marijuana at Patterson's residence at 110 E. Belle Avenue, Whitefish Bay, WI.

### Dan Meyer's residence: 133 C N. Mill Street, Saukville, WI.

77.     In September of 2012, CS #1 stated that s/he knew an associate of Lee and Heiniger named "Dan" who lived on Mill Street in the Village of Saukville. CS #1 further stated that s/he knew that "Dan" was dating Heiniger's sister. A review of Ozaukee County Sheriff's Department records revealed that Daniel R. Meyer resided at 133A N. Mill St. in the Village of Saukville, WI. Additionally, police records revealed that Meyer was listed as a passenger in a vehicle driven by Heiniger on August 29, 2005, when Heiniger was stopped by the Mequon Police Department and that when Heiniger's vehicle was stopped, Meyer was arrested for an outstanding warrant. According to postal records, and the landlord, case agents are aware that Dan Meyer and Sandra Heiniger (Paul Heiniger's sister) recently moved from 133A N. Mill Street in Saukville, to **133 C N. Mill Street, Saukville, WI**. The **133 C. N. Mill Street** address is in the same apartment complex as the 133A. N. Mill Street address.

78.     United States Postal Inspector Service (USPIS) records reveal that suspicious packages, believed to be shipments of marijuana, were shipped from California to Dan Meyer at 133A N. Mill St., Saukville, on the following dates:

- On April 13, 2012, a package was shipped from P.O. Box 170427 in San Francisco, CA to Dan Meyer at 133A N. Mill St., Saukville, WI 53080. The package weighed 10 lbs, 10.4 oz. and was delivered on April 16, 2013. Case agents have confirmed that P.O. Box 170427 in San Francisco, CA, is used by an organization called the Homeless Youth Alliance.

- On April 2, 2013, a Priority Mail package was sent from "L. Abrams" 1722 Elm Ln. Willits, CA 95490 to Dan Meyer 133A N. Mill St., Saukville, WI 53080. The package weighed 12 lbs. 7 oz., and was delivered on April 4, 2013. Case agents conducted surveillance and confirmed that the address 1722 Elm Lane, Willits, CA does not exist.

- On April 19, 2013 a Priority Mail package was sent from "Sarah Dumaine" 791 Myron Pl., Ukiah, CA 95482 to Dan Meyer, 133A N. Mill St. Saukville, WI 53080. The package weighed 8 lbs. 1 oz. and was delivered on April 22, 2013.

79.     Review of USPIS records reveals that suspicious packages, believed to be money

packages, were shipped from Dan Meyer to California, on the following dates:

- On May 14, 2013, a package was sent via Express Mail from Dan Meyer, **133A N. Mill St. Saukville, WI 53080** to Brad Rott 1715 Elm Ln. Willits, CA 95490. The package weighed 1 lb. 11 oz. and was delivered on May 14, 2013.

- On July 31, 2013, a package was sent from "Dan Meyer" 133A N. Mill St. Saukville, WI 53080, to "Doug Debolt" at 1715 Elm Ln., Willits, CA 95490. Paul Heiniger admitted he resided at 1715 Elm Lane, Willits, CA and also registered his vehicle using this address. The package weighed 1 lb. 12 oz. and was delivered on August 1, 2013.

- On September 26, 2013, a package was sent to Dan Meyer at Paul Heiniger's residence, 1715 Elm, Ln., Willits, CA from Sandra Heiniger, **133C N. Mill Street, Saukville, WI.** Case agents obtained a federal search warrant to search the package and the package contained approximately $1,500 that was wrapped inside a cigarette package and then secreted into a cigar box. Based on their training and experience, and the investigation to date, case agents believe that the $1500 recovered from this package is payment for the package seized at Lubecki's house on September 23, 2013.

80.     Additionally, on August 28, 2013, case agents assisted the Mendocino Major

Crimes Task Force with the execution of a search warrant at Paul Heiniger's residence, 1715

Elm Lane, Willits, California. Heiniger was not present when the search warrant was executed,

however, his associate and girlfriend, Casey Houtsinger, was present. A search of the residence

revealed a U.S. Priority Mail postal package parcel sent from "Dan Meyer **133A N. Mill St.,** **Saukville, WI 53808**" addressed to "Dug Debolt 1715 Elm Ln., Willits, CA 95490." No postage was affixed to the box, but the box was opened, and was empty. The search also revealed approximately 2 pounds of marijuana, a garbage bag containing loose marijuana plant trimmings indicative of a marijuana grow, drug packaging materials, including 5 gallon buckets, a vacuum sealer and bags, bubble wrap, Styrofoam packing peanuts, and rolls of box tape. The packaging materials were consistent with the method of packaging and transport of marijuana observed at Patterson's residence and discovered from Breitzman's traffic stop in California on February 14, 2013.

81. Based on their training and experience, and the investigation to date, case agents believe the suspected marijuana packages to contain marijuana because the weights of the packages are consistent with the weights of the packages they have intercepted and opened that contained marijuana; the packages are being sent from fake addresses. and they are being sent from a marijuana source area to a known marijuana user city. Based on their training and experience, and the investigation to date, case agents believe the suspected money packages to contain U.S. currency constituting drug proceeds or payment for marijuana as those packages are smaller in size and are sent from a known marijuana user city to a known marijuana source city. Also, the sender and receiver used their correct names and addresses on the money package.

#### Lubecki and Seidl's residence: 740A N. Mill Street, Saukville, WI 53080.

82. Review of USPIS records reveals that suspicious packages, believed to be marijuana shipments, were shipped from California to Ken Lubecki and Penny Seidl at **740A N. Mill Street, Saukville, WI 53080**, on the following dates:

- On October 15, 2012, a USPS Priority Mail package was sent from "Ken Weber" P.O. Box 170427, San Francisco, CA 94117 to Penny Seifkus (Seidl) **740A N. Mill**

**St. Saukville, WI 53080**. The package weighed 10 lbs. 7 oz. and was delivered on October 17, 2013. On October 18, 2012, case agents conducted a garbage search at Lubecki's residence located at **740A N. Mill St. Saukville, WI**. Examinations of the garbage removed from the residence revealed one (1) clear, plastic, Ziploc style sandwich bag which contained burnt marijuana residue with marijuana stems; one (1) mail identifier for Kenneth Lubecki and one (1) mail identifier for Penny Seidl. The marijuana residue from the plastic Ziploc bag tested positive for the presence of THC.

- On November 13, 2012, a USPS Priority Mail package was sent from Henry McAllister P.O. Box 170427 San Francisco, CA 94117 to Lubecki, **740A N. Mill St. Saukville, WI 53080**. The package weighed 9 lbs. 12 oz. and was delivered on November 15, 2012. Case agents have confirmed that P.O. Box 170427 in San Francisco, CA, is used by an organization called the Homeless Youth Alliance.

- On January 2, 2013, a package was sent from "Denise Lionel" P.O. Box 170427 San Francisco, CA 94117 to Ken Seidle **740A N. Mill St. Saukville, WI 53080**. The package weighed 9 lbs. 6 oz., was sent from the same P.O. Box for "Homeless Youth Alliance," and was delivered on January 3, 2013. On January 3, 2013, surveillance was conducted on Lubecki and Seidl's residence and case agents observed the postal carrier deliver the package and later observed Lubecki carry the package into the residence.

- On January 24, 2013, a package was sent from "L. Harris" 1724 Elm Ln. Willits, CA 95490 to Ken Lubecki, **740A N. Mill St. in Saukville, WI**. The package was approximately 12" X 12" in size, in a brown cardboard box, and weighed approximately 6 lbs, 1 ounce. On January 26, 2013, surveillance was conducted on Lubecki and Seidl's residence and case agents observed the postal carrier deliver the package and later observed a white male subject, who appeared to be Lubecki, carry the package into the residence. Case agents conducted surveillance and confirmed that the address 1724 Elm Lane, Willits, CA does not exist.

- On February 19, 2013, a Priority Mail package was sent from "S. Knapp" 17 Elm Ln. Willits, CA 95490 to Lubecki, **740A N. Mill St. Saukville, WI 53080**. Case agents conducted surveillance and confirmed that the address 17 Elm Lane, Willits, CA does not exist.

- On February 21, 2013 an Insured Priority Mail package was sent from "P. Knapp" 1724 Elm Ln. Willits, CA 95490 (an address that does not exist) to Lubecki, **740A N. Mill St. Saukville, WI 53080.**

- On February 6, 2013, a Priority Mail package was sent from "Sam Creston" 1346 S. State St. Ukiah, CA 95482 to Ken Lubecki **740A N. Mill St. Saukville, WI 53080.**

The package was approximately 16 3/4" X 12 1/2" X 12 1/2" in size, in a brown cardboard box, and weighed 11 lbs. 14 oz. The package was delivered on February 9, 2013, and case agents observed the postal carrier deliver the package and Lubecki carry the package into the residence. Postal Inspectors determined the return address listed to a homeless shelter known as Plowshares Peace and Justice Center.

- On March 20, 2013, a Priority Mail package was sent from "D. Wannecker" 1724 Elm Ln. Willits, CA 95490 to Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080.** The package weighed 10 lbs. 2 oz. and was delivered on March 22, 2013.

- On April 15, 2013, a Priority Mail package was sent from "D. Wannecker" to Lubecki **740A N. Mill St. Saukville, WI 53080**. The package weighed 11 lbs. 13 oz. and was delivered on April 17, 2013.

- On April 18, 2013, a Priority Mail package was sent from "R. Dixon" 1507 Morton Ave. Ukiah, CA 95482 to Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080**. The package weighed 9 lbs. 4 oz. and was delivered on April 20, 2013.

- On April 18, 2013, a Priority Mail package was sent from "D. Wannecker" 1346 State St. Ukiah, CA 95481 to Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080.** The package weighed 6 lbs. 7 oz. and was delivered on April 20, 2013.

- On April 22, 2013, a Priority Mail package was sent from "Matt Wolf" 802 Oak St. Ukiah, CA 95482 to Kenneth Lubecki 740A N. Mill St. Saukville, WI 53080. The package weighed 8 lbs. 2 oz. and was delivered on April 24, 2013.

- On May 9, 2013, a Priority Mail package was sent from (no name listed) 1720 Elm Ln. Willits, CA 95490 to Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080.** The package weighed 9 lbs. 6 oz. and was delivered on May 11, 2013.

- On June 7, 2013, a Priority Mail package was sent from "Samuel Pinkert" 1346 N. State St. Ukiah, CA 95082 to Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080.** The package weighed 5 lbs. 13 oz. and was delivered on June 10, 2013.

- Also on July 8, 2013, a Priority Mail package was sent from "L. Meisinger" 1341 N. State St. Ukiah, CA 95481 to Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080.** The package weighed 8 lbs. 5 oz. and was delivered on July 11, 2013.

- On July 15, 2013, a Priority Mail package was sent from "Brad Meiniger" 1700 Elm Lane Willits, CA 95490 to Kenneth Lubecki 7**40A N. Mill St. Saukville, WI 53080**. The package weighed 8 lbs. 11 oz. and was delivered on July 18, 2013. Case agents

conducted surveillance and confirmed that the address 1700 Elm Lane, Willits, CA does not exist.

- On September 21, 2013, case agents received information from the US Postal Service that a suspicious postal parcel was mailed to Ken Lubecki, **740A N. Mill St. Saukville, WI 53080**, from Ukiah, California. The return address on the parcel of 1346 S. State St. in Ukiah, CA was previously determined to belong to Plowshares Peace and Justice Center, which is a homeless shelter. The Express Package weighed 2 Lbs. 13 oz. Case agents intercepted the package, and a controlled delivery occurred on September 23, 2013. A K-9 trained in the detection of narcotics indicated on the package, and case agents then conducted the controlled delivery to Ken Lubecki at **740A N. Mill St. Saukville, WI**. Lubecki was waiting outside of the residence, and signed for the package. Lubecki provided consent to open the package, and was then interviewed by case agents. Lubecki denied any knowledge of the contents of the parcel, and stated the package he signed for was not the one he intended to receive. Upon examination of the package, it was discovered to contain a plastic Tupperware container, which contained marijuana in a vacuum seal bag. Lubecki denied any knowledge of the mail package or its content and denied smoking or using marijuana. Lubecki was advised that the package would be confiscated. The total weight of the marijuana contained in the vacuum sealed bag was determined to be approximately 481.7 grams. The package was also determined to contain approximately 104 grams of suspected Hash Oil inside of two smaller containers on top of the marijuana.

83.     Review of USPIS records reveals that suspicious packages, believed to be money packages, were shipped from Ken Lubecki **740A N. Mill St. Saukville, WI 53080** on the following dates:

- On January 25, 2013, a package was mailed from Ken Lubecki **740A N. Mill St. Saukville, WI 53080** to Paul Heiniger, 1715 Elm Ln. Willits, CA 95490. The package weighed 1 lb. 2oz. and was delivered on January 26, 2013.

- On January 28, 2013, a package was mailed from Ken Lubecki **740A N. Mill St. Saukville, WI 53080** to Paul Heiniger 1715 Elm Ln. Willits, CA 95490. The package weighed 1 lb. 8 oz.

- On February 5, 2013, a package was mailed from Ken Lubecki **740A N. Mill St. Saukville, WI 53080** to Paul Heiniger 1715 Elm Ln. Willits, CA 95490. The package weighed 1 lb. 1 oz. and was delivered on February 6, 2013.

- On February 19, 2013 a package was mailed from Kenneth Lubecki **740A N. Mill St.**

**Saukville, WI 53080** to Paul Heiniger 1715 Elm Ln. Willits, CA 95490.

- On March 6, 2013, a package was sent via Express Mail from Lubecki **740A N. Mill St. Saukville, WI 53080** to James STERN 733 Bonita Dr. Vista, CA 92083. The package weighed 3 oz. and was delivered on March 7, 2013.

- On March 15, 2013, a package was sent via Express Mail from Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080** to Paul Heiniger 1715 Elm Ln. Willits, CA 95490. The package weighed 14 oz. and was delivered on March 16, 2013. On March 17, 2013, the GPS device showed Patterson's F-350 location was at Lubecki's and Seidl's residence located at **740A N. Mill St. Saukville, WI.**

- On March 18, 2013, a s package was sent via Express Mail from Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080** to Paul Heiniger 1715 Elm Ln. Willits, CA 95490. The package weighed 2 lbs. 6 oz. and was delivered on March 19, 2013.

- On June 13, 2013, an Express Mail package was sent from Kenneth Lubecki **740A N. Mill St. Saukville, WI 53080** to Paul Heiniger 14655 Boulder Creek, CA 95006. The package weighed 11 oz. and was delivered on June 14, 2013.

84. Based on their training and experience, and the investigation to date, case agents believe the suspected marijuana packages to contain marijuana because the weights of the packages are consistent with the weights of the packages they have intercepted and opened that contained marijuana; the packages are being sent from fake addresses, and they are being sent from a marijuana source area to a known marijuana user city. Based on their training and experience, and the investigation to date, case agents believe the suspected money packages to contain U.S. currency constituting drug proceeds or payment for marijuana as those packages are smaller in size and are sent from a known marijuana user city to a known marijuana source city. Also, the sender and receiver used their correct names and addresses on the money package.

## Andrea Marquardt's residences: N16 W26587 Bluegrass Ln., Unit F, Pewaukee, WI and 1675 A. Coachlight Dr. New Berlin, WI 53151.

85. Review of USPIS records reveals that suspicious packages, believed to be marijuana shipments, were shipped from California to Andrea Marquardt on the following dates:

- On October 18, 2012, a Priority Mail package was sent from Ukiah, CA to Pewaukee, WI. The package weighed 13 lbs. 10 oz. and was delivered on October 24, 2012, on a route that covers Marquardt's address located at **N16 W26587 Bluegrass Ln. Pewaukee, WI.**

- On November 7, 2012, an Express Mail package was sent from "Harry Fratt" 4578 El Camino Ave, Sacramento, CA 95821 to Andrea Marquardt, **N16 W26587 Bluegrass Ln., Unit F, Pewaukee, WI 53072.** The package weighed 9 lbs. 12 oz. and was delivered on November 8, 2012.

- On November 13, 2012, an Express Mail package was sent from "Jim Batovski" 4536 Auburn Folson Rd. Loomis, CA 95660 to Andrea Marquardt, **N16 W26587 Bluegrass Ln., Unit F, Pewaukee, WI 53072.** The package weighed 12 lbs. 10.6 oz. and was delivered on November 15, 2012.

- On November 14, 2012, an Express Mail package was sent from "Pete Wilson" 2455 Barona St. West Sacramento, CA 95691 to A. Marquardt **1675 A. Coachlight Dr. New Berlin, WI 53151.**

- On December 26, 2012, a Priority Mail package was sent from Talmadge, CA to New Berlin, WI. The package weighed 9 lbs. 2 oz. and was delivered on December 29, 2012, by a route that covers Marquardt's address located **1675 A. Coachlight Dr., New Berlin, WI.**

- On December 26, 2012, another Priority Mail package was sent from Talmadge, CA to Pewaukee, WI. The package weighed 10 lbs. 6 oz. and was delivered on December 29, 2012 by a route that covers Marquardt's address located at **N16 W26587 Bluegrass Ln., Pewaukee, WI.**

- On February 4, 2013 (the day of Breitzman's arrest in California), a Priority Mail package was sent from "James White" Butter Ranch Road, Ukiah CA 95482 to Andrea Marquardt **N16 W26587 Bluegrass Ln. Pewaukee, WI.** The package weighed 12 lbs., 10 ounces and was delivered on February 7, 2013. Case agents conducted surveillance on February 7, 2013 and observed a green Toyota Camry bearing Wisconsin registration 727RFB registered to Marquardt parked in the driveway. Case agents also observed the postal carrier deliver the package, a medium sized brown cardboard box, and then observed Marquardt open the front door, look at the package and then close the door without retrieving the package. Marquardt then left the residence in her vehicle. For fear of being detected as law enforcement, case agents terminated surveillance.

- On July 2, 2013, an Express Mail package was sent from "D. Thompson" 15561 W. Park Ave. Boulder Creek, CA 95006 to Robert Marquardt **1675A Coachlight Dr. New Berlin, WI 53151.** The package weighed 8 lbs. 5 oz. and was delivered on July 5, 2013.

- On July 2, 2013, an Express Mail package was sent from "T. Zwyicke" 14551 W. Park Ave. Boulder Creek, CA 95006 to Andrea Marquardt **N16 W26587 Bluegrass Ln. Unit F Pewaukee, WI 53072.** The package weighed 8 lbs. 5 oz. and was delivered on July 5, 2013.

- On July 8, 2013, a Priority Mail package was sent from "T. Erickson" 1341 N. State St. Ukiah, CA 95409 to Andrea Marquardt **N16 W26587 Bluegrass Ln. Unit F Pewaukee, WI 53072.** The package weighed 8 lbs. 1 oz. and was delivered on July 10, 2013.

- On July 15, 2013, a Priority Mail package was sent from "P. Thompson" 1346 N. State St. Ukiah, CA 95482 to Andrea Marquardt **N16 W26587 Bluegrass Ln. Unit F Pewaukee, WI 53072.** The package weighed 7 lbs. 12 oz. and was delivered on July 17, 2013.

- On July 15, 2013, a Priority Mail package was sent from "P. Thompson" 1346 N. State St. Ukiah, CA 95482 to Robert Marquardt **1675A Coachlight Dr. New Berlin, WI** 53151. The package weighed 7 lbs. 9 oz. and was delivered on July 18, 2013.

86. Based on their training and experience, and the investigation to date, case agents believe the suspected marijuana packages to contain marijuana because the weights of the packages are consistent with the weights of the packages they have intercepted and opened that contained marijuana; the packages are being sent from fake addresses, and they are being sent from a marijuana source area to a known marijuana user city. Based on their training and experience, and the investigation to date, case agents believe the suspected money packages to contain U.S. currency constituting drug proceeds or payment for marijuana as those packages are smaller in size and are sent from a known marijuana user city to a known marijuana source city. Also, the sender and receiver used their correct names and addresses on the money package.

## Tammy and John Weblers' residence: 6752 S. 17th Street, Milwaukee, WI.

87. Review of USPIS records reveals that suspicious packages, believed to be shipments of marijuana, were shipped from California to **6752 S. 17th Street, Milwaukee, WI**

on the following dates:

- On October 11, 2012, a Priority Mail package was sent from Ukiah, CA to Milwaukee, WI. The package weighed 9 lbs. 9 oz. and was delivered on October 13, 2012 on a route that covers Webler's address located at **6752 S. 17th St. Milwaukee, WI.**

- On November 7, 2012, an Express Mail package was sent from "Mark Detus" 5274 Riosa Rd. Lincoln, CA. 95648 to Tammy Webler **6752 S. 17th St. Milwaukee, WI.** The package weighed 12 lbs. 15 oz. and was delivered on November 8, 2012.

- On November 13, 2012, an Express Mail package was sent from "Wendy Star" 6608 Watt Ave. North Highland, CA 95660 to John Webler **6752 S. 17th St. Milwaukee, WI 53221.** The package weighed 11 lbs. 10.4 oz. and was delivered on November 15, 2012.

- On July 2, 2013, an Express Mail package was sent from "D. Thompson" 14551 W. Park Ave. Boulder Creek, CA 95006 to T. Pederson **6752 S. 17th St. Milwaukee, WI 53221** (Webler's residence). The package weighed 8 lbs. 5 oz. and was delivered on July 5, 2013. The package was signed for by Tammy Webler, and case agents have confirmed that Tammy Webler's maiden name is Tammy Pederson.

- On July 3, 2013, a Priority Mail package was sent from Boulder Creek, CA 95006 to Milwaukee, WI 53221. There was no sender/receiver name available for the package. The package weighed 6 lbs. 13 oz. and was delivered on July 6, 2013 by a route that covers **6752 S. 17th St. Milwaukee, WI 53221.**

- On July 15, 2013, a Priority Mail package was sent from "P. Thompson" 1346 N. State St. Ukiah, CA 95482 to Tammy Pederson 6752 S. 17th St. Milwaukee, WI 53221. The package weighed 5 lbs. 9 oz. and was delivered on July 18, 2013.

88.     Additionally, when Breitzman was arrested in California on February 4, 2013, a receipt from the Ukiah Main Post Office in Ukiah, CA, dated February 4, 2013 was recovered. This receipt showed an Express Mail package sent from this Post Office to "Milwaukee, WI 53221", showing a shipment price of $73.65, which was paid for in cash. This package weighed 7 lbs. 1.2 oz. and showed Label #EI719082615US, with an expected delivery date of February 6, 2013. Also located was a "Customer Copy" of the Express Mail package, for Label #EI719082615US. The sender information was "T. Vargas, 1599 N. Bush St, Ukiah, CA 95482" and the package was sent to "Tammy WEBLER **6752 S. 17th Street, Milwaukee, WI 53221.**"

The waiver of signature box was checked on the label, with an unreadable signature authorizing the delivery to be accepted without a signature.

89.     On February 6, 2013, the above-described Express Mail package, with Label #EI719082615US was intercepted by Milwaukee HIDTA agents, and agents with the USPS. A federal search warrant was obtained for this parcel in the Eastern District of Wisconsin. The parcel was discovered to contain approximately 1,531 grams of high-grade marijuana. Agents observed that the shipping label was affixed to the exterior of the box. Inside of the parcel, agents observed an orange Home Depot bucket with a lid, along with bubble wrap. Contained inside of the Home Depot bucket was what appeared to be approximately three (3) pounds of high-grade marijuana.

90.     Based on their training and experience, and the investigation to date, case agents believe the suspected marijuana packages to contain marijuana because the weights of the packages are consistent with the weights of the packages they have intercepted and opened that contained marijuana; the packages are being sent from fake addresses, and they are being sent from a marijuana source area to a known marijuana user city.     Based on their training and experience, and the investigation to date, case agents believe the suspected money packages to contain U.S. currency constituting drug proceeds or payment for marijuana as those packages are smaller in size and are sent from a known marijuana user city to a known marijuana source city. Also, the sender and receiver used their correct names and addresses on the money package.

### Paul Markiewicz's residence: W124 N13025 Wasaukee Road, Germantown, WI.

91.     On July 31, 2013, CS#4 informed case agents that Paul Markiewicz told CS#4 that someone recently stole two pounds of marijuana from his house, **W124 N13025 Wasaukee**

**Road, Village of Germantown, WI.** Previously, on May 6, 2013, case agents conducted a garbage search at Markiewicz's residence located at **W124 N13025 Wasaukee Rd., Germantown, WI**, during which they recovered two (2) clear, vacuum seal bags which had red duct tape on them and one (1) clear, plastic, gallon size Ziploc bag that all contained suspected marijuana residue. A presumptive field test was conducted on the suspected marijuana residue from the bags which tested positive for the presence of THC. An open tax record search was done on the residence of **W124 N13025 Wasaukee Rd. Germantown, WI** which shows Paul Markiewicz as the owner. On May 13, 2013, case agents conducted garbage search at Markiewicz's residence located at **W124 N13025 Wasaukee Rd., Germantown, WI**. An examination of the garbage revealed one (1) clear, vacuum seal bag which contained suspected marijuana residue. A presumptive field test was conducted on the suspected marijuana residue from the vacuum seal bag indicated positive for the presence of THC.

92.     On August 6, 2013, case agents executed a search warrant at Markiewicz's residence located at **W124 N13025 Wasaukee Road, Village of Germantown, WI**. A search of the residence revealed a white 5 gallon sized bucket with a sealed top, containing approximately 96.6 grams of marijuana packaged in a vacuum seal bag, which is similar in appearance to white 5-gallon size buckets previously purchased by Patterson. Also discovered in a bedroom occupied by Markiewicz was a total of $11,020 concealed inside shoes inside of a shoe box. A search of a silver Toyota 4-Runner owned by Markiewicz revealed six (6) large black duffle bags, which are consistent with duffle bags observed at Patterson's residence during suspected drug transactions during this investigation. Also recovered from the search of Markiewicz's residence was a letter, typed on McDonald's letterhead, stating "To Whom it May Concern: Paul Markiewicz is authorized to use the American Express Business card. He is traveling to

California on business to look at equipment. He is authorized to use it from June 30th until July 4th. If you have any questions please contact Edward Patterson, the owner, at 414-659-7771. Thanks, Edward Patterson."

93.     Case agents conducted an interview of Markiewicz at his residence. Markiewicz stated that he works at the McDonald's restaurants located in Mequon, Fox Point, and Glendale and stated all three businesses are owned by his employer, Edward Patterson. Markiewicz admitted that he has smoked marijuana "forever" and that he "grew up smoking weed." Markiewicz admitted the marijuana discovered in the residence belonged to him. Markiewicz identified Patterson as user of marijuana, but would not be truthful regarding Patterson's involvement in marijuana sales.

## Bernardo Espinosa-Zamudio's residence: 2542 N. Holton Street, Milwaukee, WI.

94.     Review of USPIS records reveals that a suspicious package, believed to be a money package, was shipped from X. Morales-Zamudio & Bernardo Espinosa-Zamudio's residence at 2542 N. Holton Street, Milwaukee, WI, on the following occasion:

- On September 24, 2012, a package was mailed from X. Morales **2542A N. Holton St. Milwaukee, WI 53212** to Paul Heiniger 1715 Elm Ln. Willits, CA 95490. The package weighed 2 lbs. 11 oz. and was delivered on September 25, 2012. The package was signed for by Paul Heiniger, and was consistent with a money package. Public records indicate that a subject named Bernardo Espinosa-Zamudio also resides at **2542A. N. Holton St. Milwaukee, WI**.

95.     Case agents reviewed GPS records that show the movements of Patterson's truck and on April 26, 2013, and June 11, 2013, Patterson's vehicle traveled to **2542 N. Holton St., Milwaukee, WI.**

96.     Additionally, in April of 2013, Paul Heiniger traveled to Wisconsin, presumably to bring a shipment of marijuana to Edward Patterson and to meet with Edward Patterson. Case agents conducted surveillance of Patterson and Heiniger meeting in Glendale, Wisconsin and

case agents are aware that members of the Patterson DTO then went on a fishing trip. A Fishing License search for Heiniger, Houtsinger, and Patterson was conducted through the Wisconsin Department of Natural Resources (DNR). The search revealed Heiniger and Patterson both obtained a Wisconsin Fishing License on Friday, April 26, 2013 at the Wolf River Resorts located in Winneconne, WI. A Grand Jury Subpoena served the Wolf River Resorts, located at 17 N. 1st Ave. Winneconne, WI revealed that Andrea Marquardt, Edward Patterson, Timothy Moorman, Paul Heiniger and Bernardo Espinoza-Zamudio all purchased WI Fishing Licenses from the resort on April 26, 2013.

### North Shore Storage, 4390 N. Richards Street, Units #43 and #38.

97.     On October 2, 2013, case agents received records from U-Haul Moving and Storage. These records pertained to Customer Lists for **North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin.** The records revealed that **Unit #38** has been rented to Kevin Breitzman since March 30, 2013 and is paid through October 29, 2013 and Unit #43, has been rented to Edward Patterson since June 27, 2013 and is paid through October 26, 2013.

98.     CS#4 stated that after Edward Patterson's wife found out that he stored marijuana in the garage he then moved the marijuana supply to Breitzman's apartment and then to the storage unit. After Breitzman was accused of stealing money and marijuana from the storage unit, Patterson then temporarily moved it to Markiewicz' house and then to another location, believed to be storage unit **E#43.** CS #4 stated that Breitzman's storage unit contains his personal property.

99.     Case agents observed Patterson at **North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin** on September 24, 25, and 26, 2013. Additionally, review of the location monitoring device on Patterson's Ford F-350 from July 5, 2013 through September 6,

2013 revealed that Patterson's Ford F-350 has traveled to the following locations associated with Patterson's drug distribution activities with the following frequency: Tammy and John Webler's residence at **6752 S. 17th Street, Milwaukee, WI** (2 times), the U-Haul Storage Sheds, **4390 N. Richards Street, Milwaukee, WI** (8 times), Paul Markiewicz's residence at **W124 N13025 Wasaukee Rd., Germantown, WI** (3 times), Bernardo Espinosa-Zamudio's residence at **2542A N. Holton Street, Milwaukee, WI** (12 times), Glendale McDonald's, **5344 N. Port Washington Road, Glendale, WI** (20 times), Fox Point McDonald's, **8739 N. Port Washington Road, Fox Point, WI** (5 times), Mequon McDonald's, **11250 N. Port Washington Road, Mequon, WI** (10 times). Breitzman's storage unit is located very close to Patterson's storage unit; they are in the same "group" of storage units and are 5 units away from each other. Because of the close proximity of the units, based on data from the GPS monitoring device on Patterson's vehicle, case agents cannot definitively determine which of the two storage sheds Patterson is using when the GPS data shows his vehicle at **4390 N. Richards Street, Milwaukee, WI.**

100.  Based on their training and experience and the investigation to date, case agents believe that Patterson uses his storage shed unit **E#43** to store his marijuana inventory and store his drug proceeds and Breitzman uses his storage unit **#E38** to store his personal property, including documents relating to his involvement in marijuana trafficking.

## Bruce Hutson's residence: 4831 N. Oakland Avenue, Milwaukee, WI (Upper unit).

101.  On September 9, 2013 case agents spoke to CS #4. CS #4 provided information regarding a new employee named Bruce Hutson. Patterson stated Hutson was temporally hired to act as the supervisor for all three stores located in Mequon, Fox Point, and Glendale. Patterson stated he wanted Hutson to gain experience as a store supervisor in preparation for Hutson to

own his own McDonald's restaurant in the future or to potentially become a business partner with Patterson. CS #4 stated on Saturday, September 7, 2013 CS #4 and Hutson were driving in a vehicle together. While in the vehicle Hutson placed a phone call. CS #4 stated from the content of the conversation it appeared that Hutson was talking to Patterson. During the phone conversation Hutson asked "How many of the packages came in unsealed?" Hutson further stated "Whatever packages were unsealed need to be jarred because I have customers waiting." After that comment was made, Hutson stated "We need to talk about this later."

102.    Based upon their training and experience and the investigation to date, case agents believe Hutson was talking to Patterson about marijuana shipments he received that were unsealed and that they needed to be repackaged into jars.

103.    Public records search revealed that Hutson currently resides at **4831 N. Oakland Ave. Whitefish Bay, WI** and previously resided at 5075 N. Cumberland Blvd. Whitefish Bay, WI. Case agents reviewed data from the court-authorized GPS device for Patterson's truck and observed that Patterson has traveled to Hutson's residence **4831 N. Oakland Avenue, Milwaukee, WI (Upper unit)** on several occasions since September 6, 2013 and frequently travels to Hutson's residence in connection with trips to Patterson's storage shed and the post office or FedEx center. For example, on September 6, 2013, Patterson went to **4831 N. Oakland Avenue, Milwaukee, WI (Upper unit)** twice and on September 16, 2013, Patterson went to **4831 N. Oakland Avenue, Milwaukee, WI (Upper unit)** twice. Specifically on September 16, 2013 Patterson's truck pinged at the Cudahy Post office (5656 S. Packard Ave. Cudahy, WI) at 3:21 pm, Espinosa-Zamudio's residence ( **2542A N. Holton St. Milwaukee, WI**) at 4:03 pm, Hutson's residence (**4831 N. Oakland Ave. Whitefish Bay, WI**) at 4:21 pm, the U-Haul storage unit (**4390 N. Richards St. Milwaukee, WI**) at 4:35 pm, and again at Hutson's residence (**4831**

**N. Oakland Ave. Whitefish Bay, WI**) at 4:53 pm.

104.     As another example, on September 24, 2013, Patterson went to Hutson's residence **4390 N. Richards Street, Unit #E43, Milwaukee, WI,** at approximately 4:57 p.m., then to the United States Post Office in Glendale, WI, and then back to **4390 N. Richards Street, Unit #E43, Milwaukee, WI.** Case agents are aware that on September 26, 2013, a 14" x 11" USPS Express Mail envelope containing an object that is approximately 2 3/4" x 5 3/4" x 6" that weighs 1 lb 6.1 ozs., was postmarked at the Kewaskum WI post office. The parcel bears a handwritten label addressed to "Daniel Meyer, 14655 W. Park Ave, Boulder Creek, CA 95006," with a return address of "Sandra Heiniger, **133 N. Mill Street Apt C, Saukville, WI 53080**." Case agents obtained a search warrant for this package, which was found to contain $1,580 hidden inside of a cigar box. Based on their training and experience, and the investigation to date, case agents believe the currency was proceeds from Patterson or his associates' drug trafficking. Per Patterson's phone records, Hutson has consistently been one of his top frequency contacts since August 2013 and Hutson is Patterson's 24th most frequently called number.

105.     Case agents spoke to CS #4 who confirmed that Hutson was on vacation the week of September 23 and scheduled to return on September 30, 2013. CS #4 also stated Kevin Breitzman has not been seen at work for the past week. Based on publicly available records, case agents are aware that Breitzman was scheduled to appear in court in California on September 27, 2013, in California.

106.     On September 24, 2013, video surveillance of **4390 N. Richards St., Milwaukee** showed that Patterson and another subject arrived in Patterson's truck and both subjects went into the storage unit. Patterson removed an item from the storage shed and placed it in the rear cab of the truck prior to leaving the storage unit. Thereafter, he went directly to the intersection

near E. Concordia Ave. & N. Holton St., Milwaukee, which is near **2542 N. Holton St., Milwaukee.** A few hours later, at 7:24 pm, Patterson went to the FedEx Center at 5353 N. Port Washington Rd., Glendale, followed by General Mitchell International Airport, and then the FedEx World Service Center at 5375 S. 3rd St., Milwaukee.

107. Based on their training and experience, and the investigation to date, case agents believe, based on his travel to Hutson's house at **4831 N. Oakland Ave., Whitefish Bay,** followed by the storage unit, **4390 N. Richards St., Milwaukee**, where he obtained a package, and then to **2542 N. Holton St., Milwaukee,** the airport and FedEx Centers, that Patterson shipped a package containing money for a marijuana to California and then dropped off Kevin Breitzman and possibly Bruce Hutson at the airport that evening. Case agents have issued a grand jury subpoena requesting airline records for Hutson and Breitzman, and are awaiting a response.

108. On September 26, 2013, the location of Patterson's vehicle was monitored via GPS, which reflected that at approximately 2:27 pm he went to the **U-Haul storage unit at 4390 N. Richards St.,** Milwaukee. He then went directly to Huston's house at **2542 N. Holton St., Milwaukee,** where Patterson parked his truck in the parking stall behind **2542 N. Holton St., Milwaukee,** off of the alley. Patterson exited his truck and entered **2542 N. Holton St., Milwaukee** through the door located at the southeast corner of the building. At approximately 3:00 pm, Patterson exited the residence and stood by his truck, where he was observed speaking with a second unidentified subject, believed to be Bernardo Espinoza-Zamudio. After the meet, case agents drove to the front of **2542 N. Holton St., Milwaukee,** and observed a blue Hummer H3 with Wisconsin license plate DN2568. According to DMV records, the vehicle is registered to Xochitl Morales-Zamudio, who is believed to be Bernardo Espinoza-Zamudio's wife. The

vehicle was not present at **2542 N. Holton St., Milwaukee** when Patterson initially arrived.

109.    On September 28, 2013, the location of Patterson's vehicle was monitored via GPS, which reflected that at approximately 12:24 pm Patterson went to **2542 N. Holton St., Milwaukee**. Video surveillance of Patterson's residence **110 E. Belle Avenue, Whitefish Bay, WI,** revealed that immediately prior to his arrival at **2542 N. Holton St., Milwaukee,** Patterson placed a white garbage bag which appeared to contain an item and a white 5 gallon bucket in the rear cab of his truck. When Patterson returned home after visiting **2542 N. Holton St., Milwaukee**, he removed the five (5) gallon bucket and placed it in his garage. Patterson also removed what appeared to be either a black garbage bag or backpack from his vehicle and brought it inside his residence. Based on their training and experience, and the investigation to date, case agents believe that Patterson delivered a quantity of marijuana to Bernardo Espinoza-Zamudio at **2542 N. Holton St., Milwaukee** on this date.

110.    On October 1, 2013 the location of Patterson's vehicle was monitored via GPS, which reflected that at 3:41 pm he went to the **McDonald's at 5344 N. Port Washington Rd., Glendale.** He then went directly to the U-Haul storage unit at **4390 N. Richards St.,** Milwaukee and then to Huston's residence at **4831 N. Oakland Ave., Whitefish Bay,** followed by the FedEx Center at 5353 N. Port Washington Rd., Glendale.  Video surveillance at Patterson's residence revealed that when Patterson left his residence before traveling to the FedEx Center he carried a white box in his hand consistent with a small or medium FedEx shipping box. Based on their training and experience, and the investigation to date, case agents believe that Patterson obtained money from the Glendale McDonalds, **McDonald's at 5344 N. Port Washington Rd., Glendale,** U-Haul storage unit at **4390 N. Richards St.,** and Hutson's house **4831 N. Oakland Ave., Whitefish Bay,** before sending a package containing money for marijuana to California

via FedEx.

## Patterson's use of McDonalds' bank accounts to conceal DTO proceeds and to promote his drug trafficking.

111.    CS #4 stated the business accountants have no clue that Patterson uses money from the business to support his drug sales as he pulls "advances" from the business and eventually pays them back. CS #4 stated since January or February 2013 Patterson has been borrowing money from the business through advances, however, he has not been paying them back completely. CS #4 stated that although Patterson has been falling short on repaying the money he takes out in advance or the cash deposits he takes, Patterson makes sure to pay his monthly McDonald's franchise fees to keep the corporation satisfied so they do not look further into his businesses.

### Use of cash from McDonalds to further drug trafficking activities.

112.    According to CS #4, the cash registers at Patterson's three McDonald's restaurants; i.e., the Fox Point McDonald's, at **8739 N. Port Washington Road, Fox Point, WI**; the Mequon McDonald's, at **11250 N. Port Washington Road, Mequon, WI**; and the Glendale McDonald's, at **5344 N. Port Washington Road, Glendale, WI**, are emptied two or three times per day. The proceeds from those registers are compared to the "Cash Sheet" generated by the cash register. The "Cash Sheet" and proceeds are then used to prepare a "deposit bundle," consisting of the deposit slip and the items to be deposited, and those cash register proceeds are to be deposited into the bank several times per day. According to CS #4, the deposits for all three restaurants are made into accounts at BMO Harris Bank, N.A. According to CS #4, the proceeds from the Fox Point McDonald's, at **8739 N. Port Washington Road, Fox Point, WI** and the Mequon McDonald's, at **11250 N. Port Washington Road, Mequon, WI** are made into

the Fast Eddy's, LLC account; while the proceeds from the Glendale McDonald's, at **5344 N. Port Washington Road, Glendale, WI** are made into the Hotter Faster Eddy's, LLC account.

113.    BMO Harris Bank, N.A. records reflect that Fast Eddy's, LLC (the McDonald's restaurants located at **8739 N. Port Washington Road, Fox Point, WI** and **11250 N. Port Washington Road, Mequon, WI)** has a Business Tiered Checking Account, and Hotter Faster Eddy's, LLC (the McDonald's restaurant located at **5344 N. Port Washington Road, Glendale, WI)** has an Essential Business Checking Account.

114.    According to CS #4, the managers of Patterson's three McDonald's restaurants are ultimately responsible for assuring all deposits are made at these banks. According to CS #4, Melissa Condiff is the manager for **8739 N. Port Washington Road, Fox Point, WI;** Paul Cooper, who recently replaced Anthony Bieniewski, is the manager for **11250 N. Port Washington Road, Mequon, WI;** and Kevin Breitzman was the manager for **5344 N. Port Washington Road, Glendale, WI**, but may have recently been replaced. BMO Harris Bank, N.A. records reveal significantly large payroll checks made payable to these individuals.

115.    BMO Harris Bank, N.A. records reveal that cash deposits for the Fox Point McDonald's at **8739 N. Port Washington Road, Fox Point, WI** are made several times per day into a Fast Eddy's, LLC account at BMO Harris Bank, N.A. For example, on November 15, 2012, four deposits totaling $6597.88 were made into a Fast Eddy's checking account.

116.    BMO Harris Bank, N.A. records reflect that cash deposits for the Mequon McDonald's at **11250 N. Port Washington Road, Mequon, WI** are made several times per day into a Fast Eddy's, LLC account at BMO Harris Bank N.A. For example, on November 15, 2012, four deposits totaling $5155.92 were made into a Fast Eddy's checking account.

117.    BMO Harris Bank, N.A. records reflect that cash deposits for the Glendale
McDonald's at **5344 N. Port Washington Road, Glendale, WI** are made several times per day
into a Hotter Faster Eddy's, LLC account at BMO Harris Bank, N.A. For example, on January
28, 2013, six deposits totaling $12,682.56 were made into a Hotter Faster Eddy's checking
account.

118.    According to CS #4, s/he and Bookkeeper Rachelle Hasenstein are aware that
Patterson instructs his individual restaurant managers to pull cash from the "deposit bundles"
that are awaiting transport to the bank and to provide the cash to him. According to CS #4,
Patterson later returns a sufficient amount of currency to replenish the "deposit bundles" and
instructs the respective branch manager to re-construct the deposits and deliver them to the bank.
According to CS #4, Bookkeeper Hasenstein said that Patterson's practice of taking the cash
from the deposit bundles is suspicious and she believes he is involved in criminal activity.
Further, Hasenstein is concerned that if money goes missing, she may be to blame.

119.    According to CS #4, Hasenstein keeps track of the outstanding cash deposits that
Patterson has not repaid. Hasenstein regularly updates CS #4 via email about which deposits are
outstanding for the Fox Point McDonald's, at **8739 N. Port Washington Road, Fox Point, WI;**
the Mequon McDonald's, at **11250 N. Port Washington Road, Mequon, WI;** and the Glendale
McDonald's, at **5344 N. Port Washington Road, Glendale, WI.**

120.    CS #4 provided case agents with copies of the emails s/he received from
Hasenstein between September 21, 2012, and September 11, 2013. Review of these emails
reflects that on numerous dates between September 21, 2012, and September 11, 2013,
Hasenstein noted outstanding deposits **for Patterson's McDonald's restaurants located at**

**8739 N. Port Washington Road, Fox Point, WI; 11250 N. Port Washington Road, Mequon, WI; and 5344 N. Port Washington Road, Glendale, WI**.

121.    CS #4's emails reveal that between September 21, 2012, and September 11, 2013, Hasenstein noted 88 delayed deposits for the Fox Point McDonalds, at **8739 N. Port Washington Road, Fox Point, WI**. For example, in an email to CS #4 dated January 15, 2013, Hasenstein noted that **8739 N. Port Washington Road, Fox Point, WI** had $826.26 in outstanding deposits from January 13, 2013. BMO Harris Bank records reflect that a deposit in the amount of $826.26 was made for **8739 N. Port Washington Road, Fox Point, WI** on January 17, 2013; however, the date printed on the deposit slip is January 13, 2013. Based on their training and experience, and the investigation to date, case agents believe that on January 13, 2013, Patterson instructed a manager to remove cash from the deposit bundle at **8739 N. Port Washington Road, Fox Point, WI** which Patterson used to facilitate his drug-trafficking activities.

122.    CS #4's emails reveal that between September 21, 2012, and September 11, 2013, Hasenstein noted 126 delayed deposits for Mequon McDonalds, at **11250 N. Port Washington Road, Mequon, WI**. For example, in an email to CS #4 dated January 3, 2013, Hasenstein noted that **11250 N. Port Washington Road, Mequon, WI,** had $3,646.55 in outstanding deposits from September 21, 2012. BMO Harris Bank records reflect that a deposit in the amount of $3,646.55 was made for **11250 N. Port Washington Road, Mequon, WI** on January 3, 2013. However, the date printed on the deposit slip is September 21, 2012. Based on their training and experience, and the investigation to date, case agents believe that on September 21, 2012, Patterson instructed a manager to remove cash from the deposit bundle at **11250 N. Port**

**Washington Road, Mequon, WI** which Patterson used to facilitate his drug-trafficking activities.

123. CS #4's emails reveal that between September 21, 2012, and September 11, 2013, Hasenstein noted 122 delayed deposits for the Glendale McDonald's, at **5344 N. Port Washington Road, Glendale, WI.** For example, in an email to CS #4 dated February 11, 2013, Hasenstein noted that **5344 N. Port Washington Road, Glendale, WI,** had $4,417.92 in outstanding deposits from February 8, 2013. BMO Harris Bank records reflect that a deposit in the amount of $4,417.92 was made for **5344 N. Port Washington Road, Glendale, WI,** on February 11, 2013. Based on their training and experience, and the investigation to date, case agents believe that on February 8, 2013, Patterson instructed a manager to remove cash from the deposit bundle at **5344 N. Port Washington Road, Glendale, WI,** which Patterson used to facilitate his drug-trafficking activities.

124. Case agents obtained a federal search warrant for CS #4's cellular telephone, which, according to CS #4, is partially paid for by Patterson. Review of CS #4's cellular telephone resulted in locating an email dated January 22, 2013 to CS #4 from Hasenstein which in part identified deposits missing from each of the three locations. For example, Hasenstein noted that the Mequon McDonald's, at **11250 N. Port Washington Road, Mequon, WI,** had $2,379.90 in outstanding deposits from January 21, 2013. The email also identified a missing deposit from the Fox Point McDonalds, at **8739 N. Port Washington Road, Fox Point, WI** from January 22, 2013 in the amount of $645.95. The email also showed that the Glendale McDonald's, at **5344 N. Port Washington Road, Glendale, WI,** was missing a deposit from January 22, 2013 in the amount of $3318.52.

125. BMO Harris Bank records and the CS#4's emails reflect that for the period beginning September 21, 2012, and ending September 11, 2013, delayed deposits totaled: $133,126.68 for the Fox Point McDonald's, at **8739 N. Port Washington Road, Fox Point, WI;** $158,296.60 for the Mequon McDonald's, at **11250 N. Port Washington Road, Mequon, WI**; and $234,589.28 for the Glendale McDonald's, at **5344 N. Port Washington Road, Glendale.**

126. Review of an email from Hasenstein to CS #4 dated September 11, 2013, indicates that there are currently missing deposits for each branch location. The Fox Point McDonalds, **8739 N. Port Washington Road, Fox Point, WI** is missing $1800.34 from September 6, 2013. The Mequon McDonalds, **11250 N. Port Washington Road, Mequon, WI** is missing two deposits from September 10, 2013 in the amounts of $185.11 and $1000.90. The Glendale McDonalds, **5344 N. Port Washington Road, Glendale, WI,** is missing one deposit from May 27, 2013 in the amount of $1061.76 and one deposit from June 5, 2013 in the amount of $4373.35.

## Use of McDonalds' corporate card to further drug trafficking activities.

127. According to CS #4, CS #4 believes Patterson finances his marijuana distribution activities via his McDonald's restaurants by using the restaurants' corporate credit cards for marijuana distribution expenses, such as buying airline tickets and renting cars for his employees to travel to and obtain marijuana in California. According to CS #4, McDonald's employees, Kevin Breitzman and Paul Markiewicz have made marijuana-related trips to California on behalf of Patterson.

128. According to records obtained from American Express / Datamark (American Express), Edward M Patterson has two open accounts in the corporate name of Fast Eddy's, LLC. American Express card number ***4-31002 (AE card #***4-31002) is a "TrueEarning

Business Card." The monthly billing statements for this card (AE card #***4-31002) are addressed to Edward M Patterson / Fast Eddy's LLC, at his residence, i.e., **110 E Belle Avenue, Whitefish Bay, WI 53217-4607**. American Express card number ***7-24004 (AE card #***7-24004) is a "Business Gold Rewards" card. The monthly billing statements for this card (AE card #***7-24004) are addressed to Edward M Patterson / Fast Eddy's, LLC, **11250 N Prt Wshng Rd, Mequon, WI 53092-3410**.

129.    According to American Express records, the McDonalds corporate card was used to pay for money shipments from Milwaukee to California. For example, according to AE card number ***4-31002's monthly statement for the period ending November 11, 2012, Breitzman incurred a FedEx shipping cost of $87.04 to send a three (3) pound package from Mequon, WI to California, on October 17, 2012. As another example, according to AE card number ***4-31002's monthly statement for the period ending November 11, 2012, Andrea M incurred a FedEx shipping cost of $80.51 to send a two (2) pound package from Milwaukee, WI to California on October 21, 2012.

130.    According to American Express records, the McDonalds corporate card was used to pay for McDonalds employees to travel to California to obtain marijuana for the DTO. For example, According to Fast Eddy's, LLC's AE card #***7-24004's monthly statement for the period ending February 15, 2013, AE card #***7-24004 was used to incur expenses related to a trip to San Francisco, CA in early February 2013, as follows: AE card #***7-24004 was used, on February 1, 2013, to purchase a round-trip airline ticket for Kevin Breitzman to depart Milwaukee, WI for San Francisco, CA on February 2, 2013, at a cost of $421.60. AE card #***7-24004 also incurred the following expenses related to this trip: Dollar Rent-A-Car related to Breitzman acquiring a vehicle in San Francisco, CA on February 2, 2013 and returning it to

San Francisco, CA on February 8, 2013, at a cost of $1,627.79, with a subsequent additional charge of $572.00; Super 8 motel in Ukiah, CA (02/02/2013 and 02/03/2013 ); Shell Oil in Santa Rosa, CA (02/04/2013); Motel 6 in Santa Rosa, CA (02/04/2013); and Golden State Bail Bonds, of San Jose, CA, at a cost of $3,000.00 (02/07/2013).

131.    As another example, according to Fast Eddy's, LLC's AE card #***7-24004's monthly statement for the period ending July 18, 2013, AE card #***7-24004 was used to incur expenses related to a trip to San Francisco, CA in late July, 2013, as follows: AE card #***7-24004 was used, on June 30, 2013, to purchase a round-trip airline ticket for Kevin Breitzman to depart Milwaukee, WI for San Francisco, CA on June 30, 2013, at a cost of $875.60; and a one-way airline ticket for Paul Markiewicz to depart Milwaukee, WI for San Francisco, CA on June 30, 2013, at a cost of $442.80. AE card #***7-24004 also incurred the following expenses related to this trip:    Dollar Rent-A-Car related to Markiewicz acquiring a vehicle in San Francisco, CA on July 1, 2013 and returning it to San Francisco, CA on July 3, 2013, at a cost of $288.36; Motel 6 in Santa Rosa, CA (07/01/2013); Chevron gas station in Scott's Valley, CA (07/01/2013); and, Delta Airlines for a one-way ticket for Paul Markiewicz departing from San Francisco, CA, for Milwaukee, WI on July 3, 2013.

## IV.    CONCLUSION

132.    Case agents believe, based on the facts contained within this affidavit, that there is probable cause to believe that the locations described in paragraph 6 have been and are continuing to be used to as part of the conspiracy to possess with intent to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846, to facilitate to the possession with intent to deliver marijuana, in violation of Title 21, United States Code, Section 843(b), and money laundering, in violation of Title 18, United States Code,

Section 1956(a). Based on the foregoing, there is probable cause to believe that located within the locations described in paragraph 6 above there is evidence pertaining to the fruits, instrumentalities, and proceeds of drug trafficking, and the laundering of the proceeds from drug trafficking, all of which are detailed more specifically in Attachment B, Items to be Seized.

# ATTACHMENT A

**2542 North Holton Street, Lower Unit, Milwaukee, WI -** Primary residence of Bernardo Esponosa-Zamudio and Xochitl Morales-Zamudio. The duplex is described as a two story residence with brown siding, white window trim, black asphalt roof, and the numbers "2542" affixed to the right of the front door, which faces west. The residence has a two car attached garage with gray siding and dark asphalt roof. The numbers "2542" are affixed to the south side of the attached garage, which faces the alley.



## ATTACHMENT B

## ITEMS TO BE SEIZED

1.  All records relating to violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 843(b), and 846 since January 1, 2012, including:

    All bank records, checks, credit card bills, account information, and other financial records;

    Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

    Lists of drug customers and related identifying information;

    Types, amounts, and prices of drugs trafficked, as well as dated, places, and amounts of specific transactions;

    Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    Safes, vaults, or lock boxes used to store proceeds or records from these crimes; and

    U.S. Currency.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized, along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

# SEALED

Case No. 13-CR-193
[21 U.S.C. §§ 841(a)(1), (b)(1)(B),
843 & 846; 18 U.S.C. §§ 2, 924(c)
& 1956]

v.

EDWARD PATTERSON,
PAUL HEINIGER,
KEVIN BREITZMAN,
PAUL MARKIEWICZ,
ANDREA MARQUARDT, and
JOHN WEBLER,

Defendants.

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES:**

1.    Beginning in approximately 2012 and continuing until October 8, 2013, in

the State and Eastern District of Wisconsin, the State and Northern District of California,

and elsewhere,

**EDWARD PATTERSON,**
**PAUL HEINIGER, and**
**KEVIN BREITZMAN**

1